[No. 41403.   En Banc.   April 23, 1970.]

THE STATE OF WASHINGTON, *Petitioner*, v. TERRY LEE GWALTNEY, *Respondent*.*

*Charles O. Carroll, Barbara M. Durham,* and *Steve Paul Moen,* for petitioner.

*Kempton, Savage & Gossard,* and *Anthony Savage, Jr.,* for respondent (appointed counsel for appeal).

McGOVERN, J.—This is a review of an order entered by the Superior Court for King County, the Honorable Ward Roney, Judge, following the state's petition for a writ of certiorari which was granted.

June 7, 1967 Terry Lee Gwaltney was charged by information in King County with the first-degree murder of 76-year-old Cecelia Sack. August 23, 1967 a special plea of not guilty to the charge was entered upon his behalf. The plea stated that the defendant was mentally irresponsible at the time of the alleged murder and that his condition of mental irresponsibility still existed. September 11, 1967, a hearing was held to determine the competency of defendant to stand trial. The trial court found that the defendant was then suffering from a mental illness, that he was not

*Reported in 468 P.2d 433.

safe to be at large and that he did not emotionally appreciate his peril sufficiently to assist his legal counsel in defense of the charge filed against him. All further criminal proceedings against the defendant were thereupon stayed, and he was ordered confined at the Northern State Hospital.

Approximately 2 years later, July 9, 1969, the King County Prosecuting Attorney's office was advised by a psychiatrist for the State Department of Institutions that the defendant was, in that doctor's opinion, then mentally competent to stand trial. Thereafter the defendant was returned to King County and a hearing was held on October 27, 1969, to again test his competency to stand trial on the charge of murder in the first degree. After receiving certain testimony and after having the benefit of argument of counsel, the trial court concluded that the defendant was then neither presently competent to stand trial nor safe to be at large. Accordingly it entered an order further staying the criminal proceedings against the defendant and ordered him confined within the psychiatric unit of the Washington State Penitentiary. That is the order which we now review under the writ of certiorari.

■ In this state, and in many others, a person accused of a crime is held to be legally competent to stand trial if he is capable of properly understanding the nature of the proceedings against him and if he is capable of rationally assisting his legal counsel in the defense of his cause. *State v. Henke*, 196 Wash. 185, 82 P.2d 544 (1938); *State v. Durham*, 39 Wn.2d 781, 238 P.2d 1201 (1951). *Also see* 21 Am. Jur. 2d *Criminal Law* § 63 (1965).

The tests applied in our federal courts are similar. In *Dusky v. United States*, 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960), our nation's highest court stated that an accused is legally competent to stand trial on a charge filed against him if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and if "he has a rational as well as factual understanding of the proceedings against him".

Testing the only evidence received by the trial court here in the light of the foregoing standards of legal competency, we find it necessary to reverse the order of that court.

Each medical witness who testified at the competency hearing stated that the defendant was afflicted with the emotional disease of schizophrenia, but that the condition of the illness at the time of the hearing was in a good state of remission. Dr. Richard B. Jarvis, a psychiatrist, testified that the defendant had "regained the capacity to appreciate the nature of his peril, under the nature of the proceedings against him, and to participate rationally in his own defense". He further stated "that for all practical purposes, he [defendant] would have to be considered at this time [of the hearing] a sane man", whose memory of the event remains intact, who understands the nature and ramifications of being tried for the crime of first-degree murder, and who "has the will to cooperate with counsel hoping for the best possible presentation of a defense".

Dr. William A. Ogle, another psychiatrist, testified that the defendant had adequate recall and memory of the events that gave rise to the charge against him and that he was able to communicate his recollection of those events to his counsel. He said that Terry Lee Gwaltney had "the capability in a meaningful way to assist in his defense" and that he understood the ramifications and the implications of the charge against him.

Dr. George C. Harris, also a psychiatrist, said that it was his medical opinion "that Mr. Gwaltney is at the present time competent to stand trial". He said that the defendant had adequate recall of the factual events involved in the charge against him, that he was able to communicate those recollections to his attorney and that he had both an intellectual and an emotional appreciation of the ramifications and consequences of being charged with the crime of murder in the first degree.

After receiving that relevant testimony, the trial court concluded rightfully that "the defendant is competent to stand trial on the factual issue of murder in the first degree in that he appreciates his peril and can rationally cooperate

with his counsel in his own defense". But, because of its finding that "the defendant displayed a completely inappropriate grin or half-grin on many occasions" and because that grin appeared on defendant's face "in situations where the questions and answers were completely without humor, *i.e.*: his emotions were flatly displayed", the court then erroneously further concluded that:

The defendant is not competent to stand trial on the issue of penalty because of the overt symptoms of his mental illness which are beyond his ability to control. Said symptoms include an inability to convey or display his emotional feelings concerning the offense with which he is charged and such nonverbal factors as his tone of voice and facial expressions which could be easily misinterpreted by his jury and lead to the infliction of the death penalty because of said misinterpretation.

The fact that a criminal defendant is knowingly unable to adequately express his emotional feelings in a physical or verbal manner is not alone a sufficient legal basis for concluding that he is not competent to stand trial on a charge filed against him. And that is true whether the issue be of guilt or innocence or of penalty. The only basis for such a legal conclusion must be premised on a finding that the defendant is not mentally capable of appreciating his peril and is incapable of rationally assisting his legal counsel in the defense of his case.

The inability of a defendant to effectively express to a judge or jury his true emotional feelings on a subject is a fact that can be adequately explained to the trier of fact by either the defendant himself or by another witness. It is not a fact of which a judge or jury cannot be appropriately and effectively advised. That is so whether the defendant's inability to emotionally communicate springs from a speech impediment or from an emotional illness.

Defendant argues that the facts in *State v. Murphy*, 56 Wn.2d 761, 355 P.2d 323, 83 A.L.R.2d 1061 (1960), are sufficiently similar to the facts before us so as to make applicable here the law and result announced in *Murphy*. We do not agree. In *Murphy* a jury returned a general verdict

finding the defendant guilty of first-degree murder and also made a special finding that the death penalty should be imposed. We reversed and ordered a new trial upon the disclosure of essentially undisputed evidence that when the defendant testified at his own trial, he was then under the influence of tranquilizing drugs administered to him by a medical trusty under the supervision of the jail physician. Defendant himself was not aware of the probable effects which the drugs might have upon him, and his defense attorneys were not aware of the fact that he had received drugs. They were thus unable to understand or to explain to the jury the defendant's apparent lackadaisical, casual, emotionless attitude when he appeared as a witness and admitted committing the murder. That is not true here where all relevant factors affecting the capability of the defendant to emotionally communicate his feelings are known to the defendant and to his counsel. *State v. Murphy, supra,* is therefore not applicable.

The known physical inability of a defendant to personally express his emotional feelings is not a test of his competency to stand trial and when the trial court here ruled otherwise, it manifestly abused its discretion. The order of the trial court is therefore reversed and the cause is remanded for entry of an order consistent herewith.

ALL CONCUR.