GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

MICHAEL RAYMOND CROWE, Defendant

Crim. No. 27-1968

District Court of the Virgin Islands

Div. of St. Croix

March 31, 1975

MERWIN, ALEXANDER & O'BRIEN, ESQS. (WARNER ALEX-
ANDER, of counsel), Christiansted, St. Croix, V.I., *for
plaintiff*

JOHN S. WILBUR, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

## I

### BACKGROUND OF THE CASE

A court trial was held in this matter on December 2 and 18, 1974 and January 13, 1975, at which the principal issue raised related to defendant's defense of insanity. Since the killing of Roger McKibben on April 4, 1968, for which defendant stands charged, this case has endured a somewhat erratic history. On May 31, 1968, defendant pleaded guilty to Murder First Degree and was given a life sentence by Judge Gordon, then sitting as Judge of this Court. Pursuant to an Order signed by me on September 27, 1973, the foregoing sentence was vacated, on the ground that defense counsel's request for psychiatric evaluation of defendant had not been granted by Judge Gordon prior to defendant's plea. Contemporaneous with the vacating of the sentence, I ordered a psychiatric evaluation of defendant at Knud Hansen Memorial Hospital in St. Thomas. Following a hearing held on November 8, 1973, I found that defendant was not competent to stand trial at that time and remitted him to the custody of St. Elizabeth's Hospital in Washington, D.C. for further psychiatric evaluation and long-term mental health treatment. In a letter from the staff of St. Elizabeth's Hospital dated January 24, 1974, the Court was informed that they deemed defendant competent to stand trial at that time. A trial was then ordered by this Court and finally completed on January 13 of this year.

## II

### FACTS OF THE CASE

The facts surrounding the killing of Roger McKibben by defendant Michael Raymond Crowe, as recounted by defendant to the psychiatrists who testified at trial, are undisputed. They will, however, be summarized briefly in as they form the factual basis for the opinion evidence adduced at trial on the issue of defendant's plea of not guilty by reason of insanity.

While at home the evening of April 4, 1968, defendant Crowe heard on the radio the news of the assassination of Dr. Martin Luther King by a white man. Defendant had been drinking heavily the week preceding April 4 and on that day had consumed approximately a fifth of rum. Upon hearing the news, defendant decided to kill a white man in retaliation, and in furtherance thereof took a bread knife from the kitchen and proceeded towards town. During one of his interviews with Dr. Pepper, Staff Psychiatrist at St. Elizabeth's Hospital and prosecution witness at trial, defendant mentioned that because of disagreements he had had with his wife, he did not tell her what he planned to do, but suggested that he would have confided in his mother had she been there. En route to town, defendant encountered a light-skinned individual who spoke with a Spanish accent. Observing that this individual did not adequately conform to the ethnic attributes of his intended victim, defendant further proceeded to a dairy bar called the Golden Cow where he saw two white men enter with two small girls. The testimony of eyewitnesses established that after focusing on the victim for several seconds while the white individuals awaited service at the counter, the defendant stepped behind Roger McKibben and stabbed him several times, thereby causing his death.

## COMPETENCY TO STAND TRIAL

In defendant's opening statement, counsel for defendant raised the initial question of whether an accused whose mental capability can be maintained only through the use of prescribed medication may nonetheless be deemed competent to stand trial.[1] The issue of "synthetic sanity" is one of first impression in this jurisdiction and indeed in the federal courts as a whole. At trial, Dr. Pepper testified that during his stay at St. Elizabeth's Hospital, defendant was administered one hundred milligrams of thorazine three times a day and that presumedly said medication continued up to trial. A major tranquilizer with anti-psychotic properties, thorazine is used primarily to suppress anxiety in the patient and thus effects the emotional rather than the cognitive processes of the individual. Dr. Pepper stated that the drug would enhance the defendant's ability to perceive the trial proceedings.

An accused is considered to be competent to stand trial if he

"has sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

United States v. Pogany, 465 F.2d 72, 77 (3d Cir. 1972), quoting, Dusky v. United States, 362 U.S. 402 (1960) (emphasis added). See also Government of the Virgin Islands v. Niles, 295 F.Supp. 267 (D.V.I. 1969). It is clear that the foregoing inquiry is focused upon present mental condition, or the defendant's condition at the time of the trial. Bolton

---

[1] As a prefatory note, this assertion ignores Dr. Pepper's stated opinion that because defendant has never experienced a psychotic episode unless under the influence of alcohol or drugs or in the process of withdrawal therefrom, there is no reason to believe that he would be incompetent even without the prescribed medication.

v. Harris, 395 F.2d 642, 646 (D.C. Cir. 1968). Dr. Pepper's testimony regarding defendant's competency to stand trial remains the only evidence in the record on that issue. Having interviewed the defendant in November of 1973, in March of 1974 and again moments before trial, Dr. Pepper found that defendant had both a factual and rational knowledge of the charge and was capable of discussing the matter with an adequate degree of understanding.

"That this condition has resulted from the use of a prescribed tranquilizing medication is of no legal consequence. Under the . . . test, the court looks to the condition only. It does not look beyond existing competency and erase improvement produced by medical science." State v. Hampton, 218 So.2d 311, 312 (La. 1969), quoted in, State v. Potter, 204 S.E.2d 649, 656 (N.C. 1974) ; see also People v. Lalfonso, 16 Crim. L. Rptr. 2246 (Ill. App., Dec. 5, 1974).

## IV

### THE INSANITY DEFENSE

14 V.I.C. § 14(4) provides the basis for defendant's plea of not guilty by reason of insanity [see Government of the Virgin Islands v. Smith, 4 V.I. 212, 221 (3d Cir. 1969)], and reads in pertinent part:

"All persons are capable of committing crimes or offenses except—. . . persons who are mentally ill and who committed the act charged against them in consequence of such mental illness . . .".

At trial and in his Trial Memorandum, defendant has relied almost exclusively on his voluminous psychiatric history, commencing with his hospitalization in 1960 at Jacobi Hospital in New York City and culminating with psychiatric evaluation and treatment at St. Elizabeth's hospital in 1974. In the span of the past decade and a half, during which defendant has been committed to mental institutions for psychiatric treatment no less than fourteen times, defendant has been diagnosed as suffering from chronic schizophrenia, undifferentiated type and a sociopathic dis-

445

order, the latter being triggered by the consumption of large quantities of alcohol and existing exclusive of the schizophrenia. Sociopathy, according to both psychiatric diagnostic criteria as set forth in the Second Edition of the Diagnostic and Statistical Manual and the decisions of the federal courts, is not a "mental illness" within the operative definition of the term.

Although their respective testimonies differed in several minor aspects, Drs. Pepper, Lu, and Gioscia agreed that the killing of Roger McKibben by defendant Crowe was not done in consequence of his schizophrenia. Providing the Court with a factual basis for his opinion, Dr. Pepper noted that the facts surrounding the killing, as heretofore delineated, evinced a high degree of awareness and rational understanding on the part of defendant. More compelling, however, was the fact that defendant was in good control and indeed capable of making certain decisions from the time he left his home up to the moment of the killing. Finally, defendant admitted in one of his interviews with Dr. Pepper that on the evening of April 4, 1968 he was neither acting under any delusion nor experiencing auditory or visual hallucinations. The absence of the latter psychotic phenomena is inconsistent with the theory that defendant was acting in consequence of his schizophrenic disorder.

Like Dr. Pepper, Dr. Lu, Resident Chief Psychiatrist at Knud-Hansen Memorial Hospital in St. Thomas, revealed that at times during his examination of defendant in October, 1973 and November 1, 1974, defendant's behavior showed no signs of the reality distortions characteristic of schizophrenia. After recounting the circumstances of that evening as they were described to him by defendant, Dr. Lu concluded that such actions were more "a sympton of his poor sociopathic control" than his schizophrenia. More particularly, he found that the cognitive process and con-

duct involved in defendant's decisions first to avenge the death of Dr. King by slaying a white man, then discerning that the Spanish individual he confronted was not a suitable victim, and ultimately finding a victim who did conform to his retaliatory plan, all suggested a sociopathic rather than psychotic disorder.

Finally, Dr. Gioscia, presented with the foregoing factual situation in the form of a hypothetical question posed by the Assistant United States Attorney, indicated unequivocally that such actions were not schizophrenic in nature. He noted that the hypothetical question suggested judgment and planning, while a schizophrenic reaction would probably have stemmed from a delusion and would have been directed at the first person to come along rather than a person who fit a particular description.

From the eyewitness testimony adduced at trial, it is clear that as defendant entered the Golden Cow and stood seven to ten feet away from his intended victim, he paused for almost half a minute before perpetrating the stabbing of the victim. As related by Dr. Pepper at trial, ambivalence is a fundamental symptom of schizophrenia, as a result of which the person experiences pronouncedly different feelings about the same thing at the same time. Ascertaining that the defendant's hesitation prior to the assault might suggest ambivalence on his part, I questioned both Drs. Lu and Gioscia as to whether this additional fact might alter their respective opinions in any way. Dr. Lu stated that although the defendant's account to him of the killing did not include such hestitation, if accepted as true, such pause could conceivably reflect psychotic resolution on the part of defendant. He added, however, that this factor alone would not alter his belief that defendant's actions on April 4, 1968 were fundamentally sociopathic. Dr. Gioscia, on the other hand, found such hesitation reflective of the

exercise of judgment and thus entirely consistent with a sociopathic state of mind.

■ Having reviewed the voluminous psychiatric records and the testimony of the expert witnesses at trial, I think there is little doubt that Michael Raymond Crowe is a sick man and has suffered from mental illness since the early 1960's. However, the Virgin Islands Code requires not only that defendant be mentally ill, but additionally that there be a sufficient nexus, or causative link, between the mental disease and the act in question. In the face of the uncontroverted testimony of the three psychiatrists who found that defendant was motivated by an alcohol-induced sociopathic rather than a psychotic mental state on the evening of April 4, 1968, I must find that the defense as set forth in 14 V.I.C. § 14(4) is not available to defendant Crowe.

ORDER

The foregoing Memorandum Opinion concerning the defense of sanity at the time of the commission of the killing and concerning the issues raised in the Information charging defendant with Murder in the First Degree represents the Court's findings of fact and conclusions of law. The premises considered, it is now

ORDERED:

That Defendant, Michael Raymond Crowe, be brought before the Court at 2:00 p.m., April 4, 1975 for judgment to be pronounced in open court before the defendant, his attorney and the attorneys for the Government.

BE IT FURTHER ORDERED that, in addition to the regular distribution, the clerk deliver or send copies of this Memorandum Opinion and Order to the following named parties:

1. Honorable Julio A. Brady, United States Attorney

2. Honorable John S. Wilbur, Jr., Assistant U.S. Attorney
3. Honorable Alphonso Christian, Commissioner of Public Safety
4. Alfred E. Francis, U.S. Marshal
5. Lionel Todman, Probation Officer
6. Ruby Rouss, Deputy Probation Officer
7. Thomas Martin, Warden
8. Defendant, Michael Raymond Crowe
9. Warner Alexander, Esquire
10. James H. Isherwood, Esquire
11. Leighmin Lu, M.D., Psychiatrist, Knud-Hansen Memorial Hosp.
12. Nicholai Gioscia, M.D. Chief Psychiatrist, Knud-Hansen Memorial Hospital
13. Franklin J. Pepper, M.D., Chief Psychiatrist, St. Elizabeth's Hospital, Washington, D.C.