20677

The STATE, Respondent, v. Mannie Lee LAW, Appellant.

(244 S. E. (2d) 302)

666

*Florence County Public Defenders Ernest B. Hinnant* and *John S. DeBerry, Mordecai C. Johnson,* Florence, and *William R. Byars, Jr.,* Camden, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen Brian P. Gibbes* and *Richard P. Wilson,* Columbia, *for respondent.*

May 8, 1978.

RHODES, Justice:

The appellant was convicted of murder committed in the commission of the crime of robbery while armed with a deadly weapon and sentenced to death. We affirm except as to the sentence imposed.

The appellant has raised thirty-two exceptions on this appeal alleging reversible error due to events arising both before and during the trial. We have considered the record as it relates to each of the exceptions, and find most to be without sufficient merit to warrant separate treatment in this opinion. We deem it necessary to treat in detail only the exceptions which relate to the mental competency of the appellant. These exceptions can be broadly categorized under the following questions: (1) Is the jury determination that appellant was legally sane and responsible for his criminal acts supported by evidence? (2) Does the fact that the appellant was under the influence of medication which was administered shortly prior to his trial constitute reversible error?

We shall first consider the sufficiency of the evidence to support the finding of the jury that appellant was sane under the applicable criminal law standard. Briefly stated, the test in this State of whether an accused is criminally responsible for his actions is whether he had the mental capacity to distinguish moral or legal right from moral or legal wrong, and to recognize the particular act charged as morally or legally wrong. This is the so-called M'Naghten test. *State v. Cannon,* 260 S. C. 537, 197, S. E.

(2d) 678 (1973). *State v. Allen,* 231 S. C. 391, 98 S. E. (2d) 826 (1957).

The basis for the appellant's contention is apparently that he was suffering from paranoid schizophrenia and, solely because of this, is not accountable for his criminal acts.

It is undisputed that the appellant has experienced a long history of mental problems. The two psychiatrists who testified for the defense, Dr. Lockhart and Dr. Jennings, diagnosed the appellant's malady as paranoid schizophrenia. This illness is characterized by disorganization in a person's ability to think accompanied by distrust, delusions and auditory hallucinations. Dr. Camp, a psychiatrist for the State, testified that in his opinion the appellant did not suffer from paranoid schizophrenia. He further testified that he suffered from a neurotic state known as Ganzer's Syndrome, an unconscious condition which manifests itself when "a person is very anxious, very nervous about something, and they cannot handle the problem". The condition is on occasion found in persons awaiting trial and who subconsciously wish to avoid trial. He did not classify this as a mental illness.

The medical testimony indicated that schizophrenia has both active and inactive states. When in an inactive state, or state of remission, such a person is able to function in the community without abnormal behavior. Dr. Jennings testified that when the illness is in a state of remission, the possibility that a person suffering from it knows right from wrong is stronger than when the illness is in an active state. Jennings declined to express an opinion as to whether the appellant was able to distinguish between right and wrong at the time of the actions for which he was on trial. However, in response to a hypothetical question, he testified that a statement by a person that he intended to destroy evidence of his crime indicated the person knew the difference between right and wrong. Nor only was there ample evidence of the appellant's actions which could be reasonably construed as attempts to conceal his crime, the victim's wife

testified that the appellant threatened to kill her because he had "to destroy all evidence".

Only Dr. Lockhart expressed the opinion that the appellant did not have the requisite mental capacity on the date of the alleged offense. However, after agreeing that a schizophrenic in a state of remission would probably know right from wrong, he stated he did not know whether or not appellant's illness was in a state of remission on the date in question. Further, he agreed that it was probable that attempts to conceal or destroy evidence manifested an awareness of right from wrong.

■ The evidence presented a jury issue on the question of appellant's mental capacity to distinguish between right and wrong and no error of law is present.

The appellant's next contention is that he was mentally incompetent to stand trial both because of his mental deficiencies and because he was under the influence of psychotropic drugs administered prior to trial.

■ The test of whether an accused is mentally competent to stand trial is whether, at the time of trial, "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. U. S.*, 362 U. S. 402, 80 S. Ct. 788, 4 L. Ed. (2d) 824, 825 (1960); *accord, Government of Virgin Islands v. Crowe*, 391 F. Supp. 987 (D.V.I. 1975); *U. S. ex rel. Bornholdt v. Ternullo*, 402 F. Supp. 374 (D.N.Y. 1975); and *State v. Hampton*, 253 La. 399, 218 So. (2d) 311 (1969). At the hearing held on November 3, 1975, immediately preceding trial, for the purpose of determining appellant's competency, there was uncontradicted testimony by Dr. Camp that the appellant, after being administered psychotropic drugs on October 28 and 29, had been competent to stand trial since October 30. Testifying for the defense, Dr. Lockhart stated that in his opinion the

appellant was not competent to stand trial. However, as he stated, this opinion was based on examination of the appellant on October 25, prior to the administration of the psychotropic medication. He attempted to interview the appellant on November 3 to ascertain the effect of the drugs but appellant refused to be interviewed informing Lockhart that his attorneys had instructed him not to talk with anyone.

The medical testimony indicated that, while there is no cure for paranoid schizophrenia, the psychotropic medications administered to the appellant do depress and control the symptoms, thus calming the schizophrenic and allowing him to organize his thought processes and think more rationally. The medication brings on a state of remission by countering the psychotic effects of the active state.

In *State v. Hampton, supra,* the trial court held that the defendant was incompetent to stand trial because the psychotropic tranquilizing drug administered to suppress the psychotic symptoms of her paranoid schizophrenia produced only "synthetic sanity". The Supreme Court of Louisiana, however, reversed the trial judge. After noting that the psychotic symptoms were in remission, admittedly because of the medication, the court stated that it must look only to present condition and could "not look beyond existing competency and erase improvement produced by medical science". 218 So. (2d) at 312. In accord with *State v. Hampton* on this question are *U. S. ex rel Bornholdt v. Ternullo, supra,* and *Government of the Virgin Islands v. Crowe, supra.*

Given the medical testimony and the fact that appellant was able to comprehend and follow his attorney's instructions in refusing to be interviewed by Dr. Lockhart, we cannot say that appellant was not competent to stand trial and find no error in the lower court's ruling.

The appellant next contends that because he was administered medication and was under the influence of the medi-

cation during trial various constitutional guarantees have been violated. These allegations may be summarized as follows: (1) He was unable to assist counsel and confront the witnesses against him because the medication administered him affected and changed his demeanor, emotional responses, cognitive skills, and ability to comprehend and communicate; (2) Because the medication affected his demeanor, his sanity defense was undermined; and (3) Because the medication was administered forcibly, against his will and without a court order, the administration of medication (a) violated his right to freedom from interference with his bodily integrity and (b) constituted prosecutorial misconduct.[1]

The appellant's first two contentions are without merit.

His first contention is closely allied to the question of whether the appellant was competent to stand trial. The consensus of the medical testimony at both the competency hearing and trial indicated that the psychotropic medications had positive effects, reversing the active state and allowing him to function in a more rational manner. While it is true the medications do affect cognitive and communicative processes, the effect is beneficial in that it enabled the appellant to effectively exercise the very rights he asserts he was denied. It is reasonable to conclude from the medical testimony that the medications enabled the appellant to assist counsel in an effective manner. We find nothing in the record that would justify a contrary conclusion.

Likewise, there is nothing to indicate the medications undermined the appellant's sanity defense. There was much testimony given before the jury regarding the medications and their effect. The jury was well aware of the appellant's mental history and present condition and knew that the appellant's remissive state and calm demea-

---

[1] The appellant also contends that there was no showing that he would be obstreperous at trial and drugging was, thus, not necessary to pacify him. However, this is not an issue. The State does not offer the appellant's "obstreperousness" as a basis for the administration of medication to the appellant.

nor at trial were the result of medication. In addition, it was emphasized to the jury by a wealth of testimony that it was the appellant's mental state at the time of the acts complained of that governed whether he was criminally responsible.

The cases relied upon by the appellant to show that it was error to try him while he was under the influence of psychotropic medication are inapposite to the present case.

In *State v. Maryott,* 6 Wash. App. 96, 492 P. (2d) 239 (1971), the court reversed the defendant's conviction where he had been subjected to trial while under the influence of tranquilizers. The testimony in that case indicated the tranquilizers would affect the thought, expression, and manner of the person on the drugs. Further, testimony indicated the defendant was unable to assist in his defense and was dull and listless during trial. The court held that the defendant's right to freedom of thought had been violated especially in view of the fact that the only conclusion from the record was that the drugs had been administered by his jailers only for the purpose of controlling the defendant's behavior in court.

We find *Maryott* to be inapposite for the same reasons set forth in the case of *State v. Jojola,* 89 N. M. 489, 553 P. (2d) 1296 (1976), which in dealing with the precise issue presented to this Court, stated: "We do not agree that *Maryott* is controlling. There is no evidence that Thorazine affected defendant's thought processes or the contents of defendant's thoughts; the affirmative evidence is that Thorazine allows the cognitive part of the brain to come back into play." 553 P. (2d) at 1299.

The appellant also relies on *State v. Murphy,* 56 Wash. (2d) 761, 355 P. (2d) 323 (1960). In that case, the defendant, prior to being taken to the courtroom to testify, complained of a cold to a fellow prisoner who was also serving as a medical trusty. The defendant was given tranquilizing drugs by the trusty and when he took the stand he was, in marked contrast to his normal demeanor, "casual,

cool, not at all perturbed and showed a lackadaisical attitude". The Supreme Court of Washington granted a new trial. In a subsequent case, that court explained its holding in *Murphy:*

Defendant himself was not aware of the probable effects which the drugs might have upon him, and his defense attorneys were not aware of the fact that he had received drugs. They were thus unable to understand or to explain to the jury the defendant's apparent lackadaisical, casual, emotionless attitude when he appeared as a witness and admitted committing the murder. That is not true here where all relevant factors affecting the capability of the defendant to emotionally communicate his feelings are known to the defendant and to his counsel.

*State v. Gwaltney,* 77 Wash. (2d) 906, 468 P. (2d) 433, 435 (1970). For this reason, *Murphy* is not applicable. The defense was well aware in the present case that medication had been administered and its effect upon the appellant was fully explored in the presence of the jury.

The last case upon which the appellant places reliance is also distinguishable. In the case of *In Re Pray,* 133 Vt. 253, 336 A. (2d) 174 (1975), the defendant was granted a new trial because the fact that he was under the influence of medication was not revealed to the jury. In the present case, both the fact of medication and its effect upon the appellant were fully imparted to the jury by the testimony of the medical witnesses.

In order to consider the remaining allegations of appellant, it is necessary to relate the circumstances surrounding the administration of the psychotropic medication. Within a short time after appellant's arrest, an order was issued by the circuit court on October 4, 1974, permitting "Dr. Edward W. Camp, III, or any psychiatrist engaged by the defendant, to examine the defendant, Manny Lee Law." Shortly before the appellant's trial began on November 3,

1975, appellant's chief defense counsel contacted the solicitor to report that the appellant, who was lodged in the Central Correctional Institution in Columbia awaiting trial, was "in a terrible condition" due to the fact that medication had been withheld by prison authorities. Relying on the court order set out above, the solicitor contacted Dr. Camp and asked him to examine the appellant and render medical treatment. On October 28 and 29, Dr. Camp treated the appellant by injecting the previously referred to psychotropic medication.[2]

Counsel for the appellant apparently takes the position that under no circumstances can medication be administered a defendant without his consent. They contend that such would be violative of his bodily integrity. We do not feel that such an absolute right exists. It is our view that medication may be administered without the consent of a defendant under compelling circumstances, including those where the medication is necessary to render a defendant competent to stand trial. We are of the opinion that such necessity would constitute a compelling state interest justifying infringement upon the right to bodily integrity. However, such a practice should be sparingly used with prior notice to defense counsel. As Justice Brennan stated in his concurring opinion in *Illinois v. Allen,* 397 U. S. 337, 90 S. Ct. 1057, 25 L. Ed. (2d) 353, 361 (1970):

The safeguards that the Constitution accords to criminal defendants presuppose that government has a sovereign prerogative to put on trial those accused in good faith of violating valid laws. Constitutional power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace.

It must be borne in mind that the initiative, which set in motion the events culminating in administering the medication to appellant, was taken by defense

---

[2] The psychotropic medicines administered were haldol and loxatain.

counsel. He complained to the solicitor that the penal authorities were withholding appellant's medication and that, consequently, the appellant was in a "terrible condition". It is apparent to us that the sole purpose of defense counsel's conversation with the solicitor was that he use his authority to obtain medication for the appellant. It is conceded that, at this point, appellant was not in a sufficient mental state to give an informed consent that he be given the medication. However, it can well be concluded that defense counsel impliedly consented to giving the medication by reason of the events above recited.

Although the court order relied upon by the solicitor provided only that Dr. Camp should "examine" the appellant and did not provide that he should "treat" him, such order was obtained by defense counsel and, such being the case, it is not difficult to understand how the solicitor concluded that Dr. Camp would be the appropriate person to render treatment to the appellant.

The appellant has not shown any prejudice to his rights arising from the rendering of medication which denied him a fair trial. The record reflects that this protracted trial was conducted in an exceptionally fair manner with the trial judge being very solicitous of the appellant's rights. Any infringement on the appellant's rights that could have resulted in prejudice at trial were peremptorily cured at the pre-trial competency hearing. At that hearing, the State carried its burden of showing the appellant was competent to stand trial and that such competence would not have existed in the absence of medication.

We have given full consideration to all of the exceptions raised in this appeal and find no basis for setting aside the conviction or granting a new trial. Accordingly, the conviction is affirmed.

Since the appellant was sentenced to death under a statute declared unconstitutional by this Court, we remand to the circuit court for resentencing to life

imprisonment. *State v. Rodgers,* S. C., 242 S. E. (2d) 15 (filed February 15, 1978) ; *State v. Rumsey,* 267 S. C. 236, 226 S. E. (2d) 894 (1976).

Affirmed in part;

Reversed in part; and

Remanded for resentencing.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.