## 21358

The State, Respondent, v. Charles BLAIR, Appellant.

(282 S. E. (2d) 596)

### ORDER

August 27, 1981.

On January 5, 1981, Opinion No. 21358 [273 S. E. (2d) 536] was issued by this Court, remanding the above matter to the Trial Judge for a determination as to competency to stand trial.

Pursuant to the directive of this Court, and in compliance therewith, the Trial Judge has issued the attached Order finding that appellant was competent to stand trial.

IT IS, THEREFORE, ORDERED, that, in view of the finding that Charles Blair was competent to stand trial, the conviction stands.

### APPENDIX

### IN THE COURT OF GENERAL SESSIONS
(80-GS-34-31)

### ORDER

STATE OF SOUTH CAROLINA
COUNTY OF MARLBORO

The State vs. Charles Blair, Defendant.

---

The defendant was tried for murder on January 21, 1980, convicted by the jury and sentenced to life imprisonment. Thereafter, the Supreme Court in its Opinion No. 21358 of January 5, 1981, 273 S. E. (2d) 536, remanded the case to me for the purpose of conducting a hearing to determine if the defendant were competent to stand trial on January 21, 1980.

Dr. Edmond W. Camp, a psychiatrist, testified for the defendant. Dr. Camp stated that while he was on the staff of the State Hospital he had treated Mr. Blair in February of 1978 and that Mr. Blair would have been incompetent to stand trial at that time. Dr. Camp left the staff of the State Hospital in February of 1978 and had not seen Mr. Blair since that date which was almost two years prior to Mr. Blair's trial. Dr. Camp further testified that Serentil, which was prescribed for the defendant, would adversely affect the defendant's initiative and ability to cooperate with his lawyers. Dr. Camp further stated that based on his earlier examination of the defendant the defendant would have been incompetent in January of 1980.

Dr. Herbert Smith, the psychiatrist on the staff of the State Hospital, who examined and treated the defendant during October and November of 1979, testified that Mr. Blair showed no evidence of psychoses and was on medication and was well-controlled. While the defendant was under Dr. Smith's care, he continued to receive anti-psychotic medication consisting of Serentil but the dosage was reduced from 200 mg. per day to 100 mg. per day. Dr. Smith stated that no decompensation occurred even after the reduction of medication.

The medical staff examined Mr. Blair on November 15, 1979, and Dr. Smith's final summary states in part that,

"It was the opinion of the medical staff that on his present medical regimen his psychotic process is adequately controlled, he is no longer psychotic, and has attained the capacity to fully understand and appreciate the nature of the charges lodged against him, and the extent of his own peril, to understand the function and proceedings of the court and to assist his attorney in the development and execution of an adequate defense.

"It was the recommendation of the medical staff that he be returned to the jurisdiction of the court as competent to stand trial."

Dr. Smith was also present at the defendant's trial. He had the opportunity to observe the defendant and heard my examination of the defendant concerning his right not to testify at the trial. Dr. Smith testified that from the observation he did not find anything which would have been inconsistent with his earlier finding that the defendant was competent to stand trial.

Dr. Smith further testified that it was proper treatment to continue a patient on medication during trial and that the drug, Serentil, had a beneficial effect in assisting patients with problems such as the defendant to think logically and thus assist their counsel.

This issue has been previously addressed in *State v. Law,* 270 S. C. 664, 244 S. E. (2d) 302, 1978. The Court held in *State v. Law, supra,* that the ability of a defendant to assist his counsel and confront witnesses against him was not hampered by the fact that the defendant was administered medication during trial, where the medical testimony indicated that the medication had positive effects.

During the course of the trial, I observed the defendant and also had a fairly extensive colloquy with him relative to his right not to testify. I found the defendant to be intelligent, perceptive and well in control of his faculties.

Based on the medical testimony and my personal observation of the defendant during his trial, I find as a fact that Charles Blair was competent to stand trial on January 21, 1980.

During the hearing, it was quite properly called to my attention by the defendant's counsel that the defendant was not competent at this time. Dr. Smith also stated that he did not think that, at the hearing, the defendant was competent.

The defendant's counsel stated to me that they had no intention of offering the defendant as a witness. In deter-

mining whether the defendant was competent to stand trial at an earlier date, I would necessarily be guided by expert medical testimony and any observations of the defendant at that earlier time. I, therefore, conclude that the defendant's present incompetency is not a legal impediment to proceeding with the hearing and that it does not prejudice his right to a fair determination of the issue before me. A contrary ruling on this point might well have the anomalous effect of denying the defendant the relief granted to him by the Supreme Court, *i. e.,* if his medical condition has now deteriorated to the point at which he would never again be competent, then the hearing ordered by the Supreme Court could never be held.

Therefore, pursuant to the Order remanding the case to me for the purpose of determining the defendant's competency at the time of trial,

IT IS ORDERED That the sentence of life imprisonment heretofore entered in the case be, and it hereby is confirmed.

/s/ C. Anthony Harris
C. ANTHONY HARRIS
JUDGE, FOURTH JUDICIAL
CIRCUIT

Cheraw, South Carolina

July 11, 1981.