[No. C.D. 4826.   En Banc.   January 10, 1985.]

*In the Matter of the Disciplinary Proceeding Against* PHILIP R. MEADE, *an Attorney at Law.*

*Robert T. Farrell* and *Robert D. Welden,* for Bar Association.

*Philip R. Meade,* pro se.

BRACHTENBACH, J.—This is a disciplinary proceeding of a long and unusual nature. It concerns Seattle attorney Philip R. Meade, admitted to the State Bar in 1958. It started with an informal complaint to the bar association

by attorney David Van Berkem on behalf of his client Vicki Par. Meade had been engaged in 1969 by Mrs. Par to probate her husband's estate. That relationship and other legal matters continued until 1980.

On November 19, 1981, a formal complaint was issued on the Par matter charging neglect, misuse of trust funds, failure to account, personal dealings with client's funds, conflict of interest in dealing with client's funds, unfitness to practice law and failure to pay to client all of the funds held by attorney Meade. On August 13, 1981, a formal complaint was issued alleging failure to cooperate in the investigation of the Par complaint.

Hearings on the noncooperation complaint were held in October and November 1981. Meade appeared pro se. Hearing Officer Lowell K. Halverson recommended a censure for noncooperation, but questioned Meade's mental condition. Upon reference back by the Disciplinary Board, Halverson referred to possible "psychological problems beyond . . . [Meade's] immediate control" and stated that Meade's actions suggested some "slight emotional disturbance." Nonetheless, the hearing officer concluded that Meade was fully competent to practice law.

In the meantime, the bar petitioned this court for suspension pending disciplinary proceedings under (former) DRA 9.2. We held a show cause hearing on January 13, 1982. Meade appeared pro se. We suspended Meade, but stayed the suspension upon condition of cooperation in the investigation by the bar. On May 24, 1982, we revoked the stay due to Meade's failure to cooperate. He remains suspended.

In the meantime, in January and February 1982, the merits of the Par complaint were heard by Hearing Officer William E. Howard. Meade appeared pro se. The hearing officer issued findings, conclusions and recommendations on May 5, 1982, finding misuse of funds, conflict of interest relative to those funds, and failure to account and disburse. He recommended a censure and suspension for 1 year. On July 11, 1982, the Disciplinary Board, with one dissent,

adopted the findings, conclusions and recommendations of both hearing officers.

After Meade's objecting response to the Board's order, the Board ordered a hearing to determine Meade's mental competency and ability to defend himself. Additional informal complaints were received by the bar on other matters.

The bar petitioned for an inquiry hearing into Meade's mental capacity. An attorney was appointed guardian ad litem. He filed an answer, concluding on the basis of interviews with Meade that Meade was able to conduct a proper defense if represented by counsel. Meade then retained counsel.

A hearing was held before Hearing Officer Robert A. Comfort on September 7, 1983. Meade did not appear but his counsel did. A further hearing was held on December 15, 1983 with Meade and his counsel present. The hearing officer, on February 24, 1984, issued his findings, conclusions and recommendations. His recommendations were:

> Respondent Philip R. Meade be transferred to an inactive status under RLD 10.2 and remain on that status until his mental illness is cured, and he is restored to competency as determined by the disciplinary board and/or state supreme court pursuant to the rules governing the same.
>
> The disciplinary board recommend to the supreme court that the board's order of August 11, 1982, and all proceedings subsequent to the filing of the David Van Berkem and bar association's non–cooperation complaints, be vacated, and that those complaints, together with all subsequent complaints, await further proceedings in accordance with the rules governing the disciplining of attorneys, when (and if) respondent Meade recovers from his existing mental illness.

The Disciplinary Board concurred in the finding that Meade suffers from mental illness and does not have adequate mental capacity to practice law or defend himself pro se; further, they agreed that he lacked that capacity in the prior proceedings on the two complaints which are now pending in this court.

The Board recommended (1) transfer to inactive status pursuant to RLD 10.2 and (2) that the findings of the hearing officers in the pending disciplinary cases be vacated but the proceedings "remain viable and that they be remanded to the respective Hearing Officers for further proceedings in which . . . [Meade] is represented by counsel." Additionally, the Board stated that "[a]t such further proceedings, . . . [Meade], by and through his counsel, can further cross–examine witnesses, present other witnesses, and/or present other evidence as counsel deems appropriate and with parameters established by the Hearing Officer."

In summary, there are two disciplinary proceedings pending before this court; Meade has been suspended by this court. At issue in this appeal is Meade's competence to practice law and his competence to appear pro se at the hearings in the pending disciplinary proceeding.

We adopt the recommendation of the Board and now transfer Philip R. Meade to inactive status. However, we cannot adopt the recommendation that the pending disciplinary cases merely be remanded to the hearing officers for further proceedings, keeping intact the proceedings to date.

First, Hearing Officer Howard is now a superior court judge and disqualified in principle and under RLD 2.5. Second, for reasons hereafter discussed, Meade is entitled to a hearing or hearings de novo on the disciplinary charges.

Turning to the evidence at the competency hearing, Dr. George Harris, a psychiatrist who has treated Meade since March 1983, testified that Meade is in a paranoid state, associated with an underlying depressive reaction. This diagnosis was supported by a psychologist who examined Meade at Dr. Harris' request.

Dr. Harris testified that Meade was competent to handle most legal matters. However, he stated that there would be some cases in which Mr. Meade's judgment would be affected by his paranoid state and he was unable to predict which cases those would be. He also testified that Meade was unable to respond appropriately to disciplinary pro-

ceedings at that time and had been unable to do so at the time of the earlier proceedings because his perceptions and his judgment were affected by his mental condition. He emphasized that while Meade may have appeared competent at the earlier proceedings because his appearance and verbal abilities were unaffected, the paranoid state would have affected his judgment on particular cases related to his delusional system.

Bar counsel did not present any testimony to refute the testimony of Dr. Harris. Mr. Halverson, the hearing examiner who heard the noncooperation complaint, also testified that at the time of the earlier hearing he felt that Meade "wasn't always quite there", and that Meade had acted inappropriately by interrupting him in the middle of his oral opinion with a remark that was against Meade's best interest. However, he reaffirmed his conclusion that Meade's noncooperation had been willful.

The primary issue raised by a petition to transfer an attorney to inactive status under RLD 10.2 is whether the attorney is able to practice law adequately. In oral argument Meade asked this court to find that he is currently able to practice law.

The uncontroverted testimony of Meade's psychiatrist is that Meade is suffering from a mental condition which affects his judgment in some cases. These cases are not identifiable in advance. Under these circumstances, the interests of the public in obtaining competent legal counsel and the reputation of the profession require Meade's transfer to inactive status at this time.

Meade states that his condition has improved substantially with treatment. If this is so, he can petition the Disciplinary Board for reinstatement pursuant to RLD 10.3. The criteria that will be used to determine whether Meade should be reinstated are set out in *In re Sherman,* 66 Wn.2d 718, 404 P.2d 978 (1965). Meade must show that the disability has been removed, *i.e.*:

(1) [That he is] presently able capably and competently to represent his clients; to so conduct himself as to reflect

no discredit upon his profession, and to maintain its standards; and (2) [i]f so, [that] the probability of a recurrence of the condition, existing at the time of his misconduct, [is not] so great that he should presently be deprived of his right to practice his profession.

*Sherman,* at 725. The testimony of his psychiatrist confirming his improvement to the extent of removal of his disability will be important, as will any contrary testimony offered by the bar association. Upon reinstatement any pending disciplinary proceedings held in abeyance shall go forward. RLD 10.3(f).

Related to the issue of Meade's present mental condition is the issue of his mental condition at the time of the disciplinary hearing concerning the Par complaint and the noncooperation complaint. We hold that Meade was not competent to appear pro se at those hearings.

■ We apply the standard used to determine whether a criminal defendant is competent to stand trial to determine whether an attorney is competent to appear in bar disciplinary proceedings. That standard requires that the person is (1) "capable of properly understanding the nature of the proceedings against him . . ." and (2) "capable of rationally assisting his legal counsel in the defense of his cause." *State v. Gwaltney,* 77 Wn.2d 906, 907, 468 P.2d 433 (1970); *see also State v. Wicklund,* 96 Wn.2d 798, 800, 638 P.2d 1241 (1982).

We conclude that Meade was not competent under this standard at the time of the original hearings. Although testimony indicates that he intellectually understood the nature of the disciplinary proceedings, his psychiatrist testified that his mental condition at the time of the disciplinary hearings interfered with his understanding of the underlying situation and made it impossible for him to respond appropriately or to raise legitimate defenses. These are not mere mistakes in judgment, as argued by bar counsel. These symptoms of mental illness may affect an attorney's legal competence to appear in a disciplinary hearing.

However, even if Meade was in fact competent to *appear*

under this standard, it does not follow that he was capable of *defending* himself, pro se, in the disciplinary proceedings. Analogously, a finding that a criminal defendant is competent to stand trial is not equivalent to a finding that a criminal defendant is competent to appear pro se. *Westbrook v. Arizona*, 384 U.S. 150, 150–51, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (1966). We extend this rule to attorneys appearing in disciplinary proceedings.

Attorney disciplinary hearings must meet the requirements of due process. *In re Ruffalo*, 390 U.S. 544, 550, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968); *In re Metzenbaum*, 22 Wn.2d 75, 79, 154 P.2d 602 (1944). If an attorney does not have the requisite mental competency to intelligently waive the services of counsel or to adequately represent himself or herself, the attorney's due process right to a fair hearing is violated if the attorney is allowed to appear pro se. *Cf. State v. Kolocotronis*, 73 Wn.2d 92, 99, 436 P.2d 774 (1968).

The uncontroverted testimony of Meade's psychiatrist is that Meade was not capable of representing himself at the time of the disciplinary proceedings. Meade's behavior was sufficiently inappropriate to cause Hearing Officer Halverson to question his competency. The guardian ad litem appointed by the chairperson of the Board concluded that Meade was able to conduct a proper defense only *if represented by counsel.* Under these circumstances we hold that Meade did not have a fair hearing when he appeared pro se in the earlier disciplinary hearings.

In the future, if a hearing officer has reasonable cause to question the mental competency of an attorney appearing in a disciplinary proceeding, as did Hearing Officer Halverson, the hearing officer, the Disciplinary Board or a panel *shall* order a hearing to determine whether the attorney is competent to conduct a proper defense. RLD 10.2(b). In most cases we urge an evaluation of the attorney by qualified mental health professionals. If a finding is made that the attorney is competent to appear if represented by an attorney, counsel should be appointed to rep-

resent the attorney in the disciplinary proceedings if the attorney does not appear with counsel. We believe RLD 10.2(d) is broad enough to confer upon the chairperson of the Disciplinary Board the authority to appoint counsel for an attorney appearing in disciplinary hearings, but even if it were not, the chairperson has inherent authority to do so. *Metzenbaum,* at 81–82.

█ Our holding that Meade was incompetent to appear pro se at the earlier disciplinary proceedings requires that the findings of the hearing officers in those proceedings be vacated. He is entitled to a de novo hearing on the disciplinary complaints. *See Pate v. Robinson,* 383 U.S. 375, 386–87, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); *see also Seattle v. Ratliff,* 100 Wn.2d 212, 221, 667 P.2d 630 (1983) (denial of counsel for criminal defendant requires automatic reversal).

The record is inadequate to determine whether Meade is currently competent to appear in disciplinary proceedings. The Board may determine this on remand. If Meade is found to be competent to appear, the Board may proceed with the pending complaints. However, Meade must be represented by counsel in these proceedings. If Meade does not cooperate and retain counsel within a reasonable period of time, the chairperson of the Board may appoint counsel to represent him.

In summary, Meade is transferred to inactive status. The disciplinary proceedings held before Hearing Officers Halverson and Howard are vacated. The matters are remanded to the Disciplinary Board for further proceedings. The Board may (1) require compliance with RLD 10.3 or (2) based upon its evaluation of Meade's present competency, in light of Hearing Officer Comfort's findings and this opinion, order the disciplinary proceedings to continue, either to full hearings with counsel, retained or appointed, or to more restricted proceedings such as, by way of illustration, not limitation, the use of discovery or other means

to preserve evidence.

WILLIAMS, C.J., UTTER, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.