2014 APR 21 AM 10: 25


IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RODOLFO APOSTOL, | ) | No. 69996-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RONALD WASTEWATER DISTRICT, | ) | |
| a King County municipal corporation, | ) | |
| | ) | FILED: April 21, 2014 |
| Respondent. | ) | |
| | ) | |

LEACH, J. — Rodolfo Apostol appeals the trial court's denial of his CR 60(b)(11) motion to vacate the dismissal of his lawsuit against Ronald Wastewater District (District). He claims that he was incompetent to represent himself and to testify during the original trial court proceedings. But Apostol did not submit any evidence that established his alleged incompetence. And the trial judge, who had observed Apostol in court during the lawsuit, found that he was capable of representing himself. Because Apostol failed to identify extraordinary circumstances warranting the requested relief, the trial court did not abuse its discretion in denying the motion to vacate. We affirm.

FACTS

The District hired Apostol as a maintenance technician in 1994. In 2002, Apostol began accusing co-workers and managers of discrimination and harassment. Apostol's relationship with the District deteriorated until September

21, 2005, when he left the workplace and did not return. The District terminated Apostol in February 2006.

On August 28, 2008, Apostol filed a lawsuit against the District, alleging claims for harassment, discrimination, retaliation, negligent and intentional infliction of emotional distress, and constructive discharge. On April 23, 2010, the trial court dismissed the action on summary judgment. This court affirmed, concluding that Apostol's claims were either barred by the statute of limitations or unsupported by sufficient evidence to establish a prima facie case.[1] Apostol appeared pro se throughout the proceedings in the trial court and on appeal.

On January 9, 2013, represented by counsel, Apostol moved to vacate the summary judgment under CR 60(b)(11). He argued that the discrimination and harassment he suffered at work had aggravated his mental illness, rendering him incompetent to represent himself or to testify during the trial court proceedings. Apostol supported the motion primarily with declarations from several treatment providers, an attorney, and a co-worker.

The same judge who had conducted the trial court proceedings denied the motion to vacate. The court expressly noted that despite any existing mental infirmity, Apostol's correspondence with opposing counsel during the original proceedings and his conduct in open court established that he "was sufficiently

---

[1] Apostol v. Ronald Wastewater Dist., noted at 162 Wn. App. 1036, 2011 WL 2611748, review denied, 173 Wn.2d 1010 (2012).

capable of representing himself so as to make the relief requested under CR 60(b)(11) unwarranted." Apostol, appearing pro se, has appealed.

## ANALYSIS

Although he is appealing from the denial of his CR 60(b)(11) motion to vacate, Apostol has devoted most of his arguments to reasserting the discrimination, harassment, and retaliation claims that the trial court dismissed on summary judgment in 2010. But this court affirmed the dismissal on appeal, and that decision became final when the mandate issued on February 29, 2012.[2] Moreover, a CR 60(b) motion is not a substitute for an appeal.[3] "An appeal from denial of a CR 60(b) motion is limited to the propriety of the denial not the impropriety of the underlying judgment."[4] Accordingly, we review only the denial of Apostol's CR 60(b)(11) motion to vacate.

CR 60(b)(11) permits the trial court to vacate a judgment or order for "[a]ny other reason justifying relief." Relief under CR 60(b)(11) is limited to "'extraordinary circumstances not covered by any other section of the rule.'"[5] The circumstances must involve irregularities extraneous to the court's action or

---

[2] See RAP 12.7(a) (generally, Court of Appeals loses power to change or modify its decision upon issuance of the mandate).
[3] See Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).
[4] Bjurstrom, 27 Wn. App. at 450-51.
[5] In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985) (quoting State v. Keller, 32 Wn. App. 135, 140, 647 P.2d 35 (1982)).

concerns about the regularity of the court's proceedings.[6] We review the trial court's ruling on a motion to vacate for an abuse of discretion.[7]

Apostol contends that a mental disability made him incompetent to represent himself and to testify during the original trial court proceedings and that this extraordinary circumstance justified vacation of the underlying judgment. In Washington, courts presume the mental competency of litigants.[8] But courts must balance the presumption of competency and "the fundamental right of a party to use his or her personal judgment and intelligence in connection with his or her lawsuit" with the obligation "to protect the rights of a litigant who appears to be incompetent."[9] Consequently, the trial court "should appoint a guardian ad litem for a litigant when it is 'reasonably convinced that a party litigant is not competent, understandingly and intelligently, to comprehend the significance of legal proceedings and the effect and relationship of such proceedings in terms of the best interests of such party litigant.'"[10]

Courts also presume that every person is competent to testify.[11] Witnesses are incompetent to testify if they are (1) "of unsound mind, or intoxicated at the time of their production for examination," or (2) "appear

---

[6] Yearout, 41 Wn. App. at 902.

[7] In re Marriage of Shoemaker, 128 Wn.2d 116, 120-21, 904 P.2d 1150 (1995).

[8] Vo v. Pham, 81 Wn. App. 781, 784, 916 P.2d 462 (1996).

[9] Vo, 81 Wn. App. at 785.

[10] Vo, 81 Wn. App. at 790 (trial court erred by failing to conduct a hearing to determine pro se litigant's competency after litigant exhibited bizarre behavior during trial) (quoting Graham v. Graham, 40 Wn.2d 64, 66-67, 240 P.2d 564 (1952)).

[11] State v. S.J.W., 170 Wn.2d 92, 100, 239 P.3d 568 (2010).

-4-

incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly."[12] The determination of witness competency necessarily rests primarily with the trial judge, who "sees the witness, notices his manner, and considers his capacity and intelligence."[13]

To support his claim of a mental disability, Apostol submitted several declarations and a 2011 administrative law decision finding him disabled for purposes of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (d).

### Susan Mindenbergs

Apostol retained attorney Mindenbergs in May 2005 to have discussions with the District about his harassment allegations. In September 2005, Apostol called Mindenbergs and asked her to file a civil rights action against the District. Apparently based on Apostol's distress during the telephone call, Mindenbergs declined to represent him, believing that his mental condition rendered him unable "to withstand the stress entailed in prosecuting a civil rights suit."

### Stephen Paulus

Paulus, a maintenance manager for the District, hired Apostol and remained his supervisor until retiring in 2003. Based on his observations, he believed that Apostol's claims of harassment and discrimination were credible. Paulus does not indicate that he had any contact with Apostol after 2005.

---

[12] RCW 5.60.050(1)-(2).
[13] State v. Allen, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

### Hainan Berman, PhD

Berman, a clinical psychologist, provided anger management counseling for Apostol in 1997 and 1999. Apostol returned for therapy in 2006, reporting distress and anxiety arising from his experiences at the District. In 2012, in response to a request from Apostol's counsel, Berman acknowledged that he had not seen Apostol since 2006 and that his contact up to that time had been "episodic, limited and intended solely to provide support and short-term psychotherapy." Based on that contact, Berman "doubt[ed]" that Apostol had been fully capable of effectively representing himself or testifying "in a lawsuit against his employer in 2006."

### Kenneth Mayeda, MD

Mayeda, Apostol's personal physician, began treating Apostol for anxiety, depression, and insomnia in the late 1990s. Mayeda attributed the deterioration in Apostol's condition in 2004 to his experiences at work. From October 2005 to April 2006, Mayeda certified that Apostol needed to take a leave from work to facilitate his recovery.

### David Dixon, PhD

Dixon, a clinical psychologist, met Apostol in December 2006 in conjunction with Apostol's worker's compensation claim. Dixon administered standardized psychological tests and testified on Apostol's behalf before the Board of Industrial Insurance Appeals in February 2007. During the proceeding, Dixon observed Apostol, who represented himself. Dixon apparently had no

further contact with Apostol until June 2012, when he performed a second psychological evaluation to support the motion to vacate.

Based on his evaluations and contact with Apostol in 2006, 2007, and 2012, Dixon diagnosed Apostol with posttraumatic stress disorder and generalized anxiety disorder. He concluded that Apostol's "mental illnesses likely rendered him unable to represent himself in court or in any adversarial proceeding" from 2005 to 2012 and incapable of testifying as a witness from 2005 "through, at least, 2008." Dixon found that Apostol's condition had improved by 2012 sufficiently to permit him to testify.

2011 Administrative Law Decision

On June 22, 2011, an administrative law judge found that Apostol had been disabled since September 21, 2005, under sections 216(i) and 223(d) of the Social Securities Act. In determining that Apostol's condition was sufficiently severe to establish disability, the judge relied on, among other things, Apostol's feelings of being unappreciated and misunderstood, his difficulty in forming relationships, restrictions in the activities of daily living, anger control problems, negativistic attitudes, depressed mood, and "moderate difficulties in maintaining concentration, persistence or pace."

Apostol represented himself in the trial court from August 28, 2008, when he filed the lawsuit against the District, until April 23, 2010, when the trial court dismissed the claims on summary judgment. He alleged 13 causes of action in his complaint and participated in the subsequent proceedings, including

discovery. He corresponded with opposing counsel, responded to motions, and appeared at court hearings. In his own supporting declaration, Apostol acknowledged that he consulted with an attorney before filing the lawsuit and that he "researched the law and filed the appropriate documents with the court to the best of my ability." After the trial court dismissed his claims, Apostol represented himself throughout the appeal.

Mindenbergs, Paulus, and Dr. Berman had no contact with Apostol after 2005 or 2006. Dr. Dixon evaluated Apostol in February 2007 and again in 2012, but he had no contact with him during the trial court proceedings. Apostol apparently continued to see Dr. Mayeda, his personal physician, during 2008 and 2009. But Dr. Mayeda did not describe Apostol's condition during this period and did not suggest that Apostol had ever been incompetent to represent himself or to testify.

Although the administrative law judge found that Apostol had been disabled since September 2005, the decision defined "disability" for purposes of the Social Security Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments." Nothing in this definition or in the decision suggests that Apostol, who represented himself and testified during the proceeding, was incompetent.

In summary, none of the declarants treated or observed Apostol during the course of the trial court proceedings. Nor did Apostol identify any incident or

conduct during the proceedings suggesting that he was unable to comprehend the legal significance of the proceedings or indicating that he was of "unsound mind" or incapable of receiving just impressions of the facts.[14] Under the circumstances, the evidence of alleged incompetence was highly speculative.[15] The trial judge, on the other hand, had observed Apostol throughout the proceedings and expressly noted Apostol's participation in the action and his conduct in open court.

Apostol's reliance on In re Disciplinary Proceedings Against Meade[16] is misplaced. In Meade, the court held that in order to be competent to appear in bar disciplinary proceedings, an attorney must meet the same standard governing a criminal defendant's competency to stand trial.[17] In addition, due process requires that attorneys appearing pro se in disciplinary proceedings have "the requisite mental competency to intelligently waive the services of counsel or to adequately represent himself or herself."[18]

Apostol has not cited any authority suggesting that a similar standard applies to civil litigants who appear pro se. Moreover, the incompetency determination in Meade rested on the uncontroverted evaluation of a psychiatrist

_____

[14] See State v. Watkins, 71 Wn. App. 164, 169, 857 P.2d 300 (1993) ("unsound mind" under RCW 5.60.050 "refers only to those with no comprehension at all, not to those with merely limited comprehension").

[15] In re Disciplinary Proceeding Against Koehler, 110 Wn.2d 24, 30, 750 P.2d 254 (1988) (psychiatrist's evaluation of competency one year after relevant time period too speculative when contradicted by firsthand observations of hearing officer).

[16] 103 Wn.2d 374, 693 P.2d 713 (1985).

[17] Mead, 103 Wn.2d at 380.

[18] Mead, 103 Wn.2d at 381.

and the hearing officer's contemporaneous observations questioning the attorney's mental condition. Apostol failed to submit any comparable evidence to support his claimed incompetence.

Because Apostol failed to establish extraordinary circumstances warranting relief under CR 60(b)(11), the trial court did not abuse its discretion in denying the motion to vacate.

Affirmed.

_Leach, J._

WE CONCUR:

_____

_Spearman, C.J._