*In the Matter of* GORDON MCLEAN CAMPBELL, *an Attorney at Law.*\*

*Robert O. Wells, Jr.,* for Board of Governors.

*George G. Bovingdon* and *Gordon McLean Campbell,* pro se, for respondent.

HILL, J.—The Board of Governors of the Washington State Bar Association (on the basis of the findings and recommendation of its hearing panel) has recommended that Gordon McLean Campbell be transferred from the active to the inactive roll of attorneys for the reason that Mr. Campbell is unable, because of mental disability, to

\*Reported in 444 P.2d 784.

adequately and competently represent clients in legal matters.

This is not a disciplinary proceeding, although the applicable rules are found in the Discipline Rules for Attorneys, being subsections B, C, and D of Rule XIV.[1] There are no complaining clients; indeed, there seem to have been no clients since Mr. Campbell closed his office in July, 1964. There is no suggestion of any lack of personal integrity. The sole issue is the mental capacity of Mr. Campbell to practice law.

Mr. Campbell is 44 years of age and was admitted to the practice of law in this state August 31, 1949. He engaged in the general practice of law at various times and places in Tacoma and Seattle until August, 1964, but has not since

---

[1] "B. If it appears to the Board of Governors that there is reasonable cause to believe that an active member who has not been judicially determined to be mentally competent or mentally ill is unable to adequately conduct his practice because of mental or physical disability, a complaint in the name of the Association shall be served upon such attorney and shall be referred to the local hearing panel for a hearing on the sole issue of the capacity of the member to adequately conduct his practice. The hearing panel, at the conclusion of its hearing, shall prepare findings, conclusions, and a recommendation as to whether or not the respondent attorney should be placed on the inactive roll. The record of such proceeding shall thereafter be reviewed by the Board of Governors, which shall make findings and conclusions based thereon and shall enter an appropriate order.

"C. The rules of procedure pertaining to disciplinary proceedings shall apply to a proceeding instituted pursuant to the preceding section, but such a proceeding shall not constitute a disciplinary proceeding, nor shall it in any manner reflect discredit upon the respondent member as an attorney. In the event that the respondent attorney does not appear by an attorney within the time prescribed by such rules for the filing of an answer, the chairman of the hearing panel shall appoint a member of the Bar to represent the member in such proceeding.

"D. An order of the Board transferring a member to inactive status shall become effective fifteen days after the service of a copy of such order upon the respondent member or his attorney unless within said 15-day period a request for review by the Supreme Court is filed with the Association. Upon service of such a request the Association shall file the record of the proceeding with the Supreme Court and the rules of procedure applicable to disciplinary proceedings before the Supreme Court shall apply. The order of the Board shall be ineffective pending the review."

maintained an office for the practice of law, nor has he handled any business for clients since that time. Before the hearing panel, in June, 1967, he testified: "I've been looking for work since August, 1964, almost three years ago." Mr. Campbell referred to no source of income during this period except a monthly pension of approximately $160 a month.[2]

The complaint by the Washington State Bar Association against Mr. Campbell has two facets. The first is his belief that the air is a living, intelligent person of considerable power which speaks to him and is "probably" God; the second facet has to do with Mr. Campbell's efforts to implement his belief that he has a constitutional right to be employed and that a person from whom he seeks employment must employ him if he is financially able to do so. It is with this second facet of the charge that we are primarily concerned.

The findings are that four actions[3] were commenced by Mr. Campbell against different lawyers, the wife being joined in each instance. Each was for future wages in the amount of $300 a month from the date on which Mr. Campbell had made application for employment with that particular lawyer.[4]

█ Mr. Campbell's admissions relative to the legal basis for the commencement and prosecution of these actions for future wages provide ample justification for transferring him from the active roll to the inactive roll of attorneys, hence it is unnecessary to discuss any additional grounds which may exist for such action.

---

[2]This pension is the result of a disability caused by the loss of a foot in combat during World War II. He wears a prosthesis and handles it so well that, as he testified, "Sometimes people can't tell I have it."

He does not state the amount of the pension, but in certain actions hereinafter discussed, he stated that he had an "income in the sum of approximately one hundred sixty dollars monthly."

[3]One in the United States District Court for the Western District of Washington, and three in the Superior Court of the State of Washington for King County.

[4]It would seem that a mentally competent lawyer who persisted in waging such harassing legal actions would be disbarred.

A good many of Mr. Campbell's assignments of error relate to findings and conclusions made (or not made) as a result of his claimed discovery of the air as a living person with a voice. He referred repeatedly to his great discovery "that the Air is a living intelligent person of considerable powers and, probably, God." Some of his assignments of error go to the failure of the hearing panel to make findings on "whether or not the Air is alive and probably God or part of God," and whether the air has the power of speech.

The hearing panel was not constituted to make such determinations; nor is it within our competence.

What Mr. Campbell believes and what he hears (or what he says he believes and hears) have not been considered in reaching our decision that he is mentally incapable of practicing law. Assignments of error directed to findings made or conclusions reached by the hearing panel or the Board of Governors on that phase of the case need not be considered, because they have not influenced our decision. We proceed on the basis that a lawyer who believes that he has a constitutional right to use our courts to compel someone who doesn't want to employ him to nevertheless pay him $300 a month for an indeterminate future period is mentally incapable of adequately and competently representing clients in legal matters. We do not judge Mr. Campbell on the basis of what he believes or hears, but on the basis of what he has done in the commencement and prosecution of the actions to which we have referred and the legal theories on which he justifies the bringing of such actions.

Other assignments of error are predicated on a claimed interference with his freedom of speech and worship. There has been and is no denial of Mr. Campbell's right to speak freely to whom he pleases or to worship as he pleases.

Error is assigned to the appointment of George G. Bovingdon to represent Mr. Campbell on the ground that he did not want an attorney and preferred to act pro se and was competent to do so.

There being an issue of competency, the appointment of Mr. Bovingdon was in accordance with the best

tradition of the bar in making sure that a claimed incompetent was adequately and properly represented. It is required by the applicable rule (DRA XIV C). The appointment in no way hampered Mr. Campbell in his pro se presentation.

It is urged by Mr. Campbell that he was denied his right to a trial by jury and his right to a fair tribunal.

■ This *is* not a criminal proceeding, nor a statutory sanity proceeding; and there was no right to a trial by jury on the issue of whether Mr. Campbell was mentally competent to practice law. As we have frequently pointed out, a proceeding such as this is basically an inquiry into the fitness of a member of the bar, in the light of his conduct or condition, to continue the exercise of his privilege to practice law. It is a special proceeding, neither civil nor criminal, incident to the inherent power of the court to control its officers. It is *sui generis*. *See In re Simmons,* 65 Wn.2d 88, 94, 395 P.2d 1013 (1964); *In re Sherman,* 58 Wn.2d 1, 354 P.2d 888 (1960), 363 P.2d 390 (1961); *In re Little,* 40 Wn.2d 421, 244 P.2d 255 (1952). *See generally,* 102 A.L.R. 399; 114 A.L.R. 171.

No objection or challenge was made by Mr. Campbell to any member of the hearing panel, though the rules for conducting the hearing gave him that privilege (DRA IX E). Any objection to the fairness of the tribunal has been waived.

His criticism of the members of the hearing panel would apply to any panel that might be selected, for he claims that bias must be presumed because if the hearing panel eliminated him from the active practice of law the members of the panel could be pecuniarily benefited thereby. Such a contention is unworthy a member of an honorable profession and, particularly, from one who concedes he has had no client except himself during the preceding 3 years.

Having reviewed all of the pertinent assignments of error and finding nothing conceivably prejudicial to Mr. Campbell in the procedure followed, we are in accord with the

recommendation of the hearing panel and of the Board of Governors that—on the basis of the second facet in the complaint against Gordon McLean Campbell—his name should be stricken from the roll of attorneys engaged in active practice in this state and placed on the inactive list until such time as he can establish that he is again mentally competent to practice law.

ALL CONCUR.