[No. C.D. 9410.   En Banc.   May 6, 1982.]

*In the Matter of the Disciplinary Proceeding*
*Against* ROGER C. RYAN, *an*
*Attorney at Law.*

*Robert T. Farrell,* for Bar Association.

*Roger C. Ryan,* pro se, and *Preston, Thorgrimson, Ellis & Holman,* by *Stephen A. Smith,* as guardian ad litem.

BRACHTENBACH, C.J.—The question is whether attorney

Roger C. Ryan should be continued on inactive status.

In April 1981, the Washington State Bar Association, at the direction of the Disciplinary Board, filed a petition pursuant to DRA 4.1(b), for inquiry into Ryan's mental capacity to conduct the practice of law. A guardian ad litem was appointed and a hearing was held. DRA 4.1(b). The hearing panel officer found and concluded that Ryan was suffering from a mental illness or other mental incapacity as a result of which he was incapable of properly conducting the practice of law. He recommended transfer to inactive status until Ryan demonstrated by competent medical evidence his recovery from mental illness or incapacity or alternatively, that such condition would not adversely affect his practice of law.

The Disciplinary Board adopted the findings, conclusions and recommendation of the hearing panel officer and ordered Ryan placed on inactive status until reinstated as provided in DRA 4.2. We concur.

Ryan's guardian ad litem contested the Board's findings, conclusions, and recommendation on several grounds. To address these contentions, we find it necessary to set forth in detail some of the factual bases for the Board's recommendation and our affirmation of it.

Ryan was in private practice in Seattle from February 1978 to September 1980; however, no new clients were accepted by him after December 1979. The choice to refuse new clients and close his office stemmed from Ryan's belief that many of the cases he was handling were fabricated or did not represent actual cases or controversies. He came to believe, and still believed at the time of the hearing, that family, friends, and other attorneys had referred cases to him which on their face appeared to be ordinary legal disputes, but which were, in his words, "bogus cases." He testified at the hearing that he believed and continued to believe that some of his clients, cocounsel, adverse parties, a 3–person arbitration panel, a King County Superior Court judge, and a jury all knew that certain disputes were fabricated, but staged them for his benefit.

Based on these beliefs, Ryan filed two pro se lawsuits. The first, filed in November 1980, was a complaint for personal injuries against three individuals and two grocery store chains. Ryan alleged: (1) that he had represented a number of clients "whose claims were very unlikely to present actual cases or controversies"; (2) that many of those cases actually were "bogus cases"; (3) that one defendant, a friend of his mother, had referred many of the "bogus cases" to him; (4) that when this defendant became aware of Ryan's suspicions she formed a conspiracy with the other defendants "the purpose of which was to 'drug, gas and otherwise harass'" Ryan; (5) that to carry out the conspiracy, the grocery stores tampered with certain products purchased by Ryan and otherwise harassed him; (6) that other defendants, including Ryan's landlord, exposed him to painful and debilitating gasses, placed foreign substances in his water supply, and placed listening devices in his apartment in furtherance of the conspiracy. In this complaint Ryan sought an injunction as well as damages. When the complaint was dismissed, he appealed.

In July 1981, after receiving notice of the bar association proceedings, Ryan filed a second 45–page complaint against numerous defendants including former clients, eight lawyers and an insurance company. He alleged a conspiracy, fraud, and extreme, outrageous, reckless and negligent conduct. These allegations concerned cases which Ryan had handled, including at least one case that was still pending at the time the complaint was filed. Again he claimed these cases were not actual controversies. Among other injuries, he alleged severe emotional injury as well as his inability to distinguish between cases which presented a real controversy and those which did not.

Subsequent to the hearing before the hearing panel officer, Ryan withdrew both these complaints. He did not, however, admit that the allegations he made were delusional, nor did he indicate that his beliefs have changed since the filing of those complaints. Instead, he and his guardian ad litem attack the Board's recommendation that

Ryan be placed on inactive status on constitutional and procedural grounds.

■ First, Ryan contends that the evidence fails to establish a nexus between his mental condition and his capacity to practice law. *See Schware v. Board of Bar Examiners,* 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957). We find a sufficient connection. Ryan's delusions are intimately connected with his practice. His own testimony is that his beliefs about the "bogus" cases have rendered him unable to distinguish between real and fraudulent cases. He has sued former clients, cocounsel and opposing counsel. He has made public his belief that a pending case was fabricated. Moreover, one psychiatrist concluded that Ryan had a "fullblown paranoid delusion" encompassing almost everyone he has met in recent years. This doctor's opinion was that Ryan was not capable to practice law.

As Ryan is not presently practicing law, it is necessary to speculate to some degree about his present and future capability to practice. The conclusion reached here, however, is based upon Ryan's own actions which occurred in close proximity to the hearing. We believe the evidence shows that Ryan, if restored to active status, might make irrational judgments concerning the merits of cases brought before him and might continue to subject clients to litigation based on allegations of conspiracy and fabrication. We believe it is not in the best interests of the public and the bar that a lawyer in this mental condition be allowed full practice rights. Moreover, to grant Ryan a limited license to practice, as suggested by his counsel, is unprecedented and under these circumstances, would place too great a policing burden on the bar association.

■ Ryan's next challenge is that the discipline rules are not sufficiently specific to comply with the due process requirement of fair notice. Ryan asserts that an attorney can be transferred to inactive status upon a finding of mental illness or other mental incapacity and that such terms are too vague to withstand a constitutional challenge. Ryan overlooks, however, the qualifying condition of the

rule that the mental condition must cause the attorney to be unable to conduct his/her law practice adequately. DRA 4.1(b). Thus, the bar must establish that an attorney is unable to conduct the practice of law adequately because of insanity, mental illness, senility, excessive use of alcohol or drugs, or other mental incapacity. DRA 4.1(b). Given the inherently uncertain nature of mental illness and the broad ranges of the practice of law, we fail to perceive how a more definite standard could be articulated, and Ryan has suggested none.

Ryan had notice of the basis for the complaint. Throughout the hearing, the focus was upon the allegations contained in Ryan's own civil suit complaints. Moreover, in his testimony, Ryan confirmed his current belief in these allegations.

Based on this testimony and the testimony of others, including several friends who testified to their belief that Ryan was suffering from a mental problem, the hearing panel officer found Ryan's beliefs to be unreal and solely the product of Ryan's unstable mental state. He also found that this unstable mental state rendered Ryan incapable of practicing law adequately. There is ample evidence in the record to support both these findings.

Finally, Ryan and his guardian ad litem contend that evidentiary errors render the Board's recommendation improper. We find that these contentions are without merit. The challenges to the admission of certain evidence cannot be sustained for the determination came within the discretion of the hearing panel officer and we find no abuse of that discretion.

Also, no error was committed by the hearing panel officer by his reliance on the expert opinion of one psychiatrist which conflicted with, to a certain extent, the expert opinion of another psychiatrist. Differences in the amount of time each psychiatrist spent with Ryan and the scope of their investigations presented valid grounds for according their opinions different weight. *See Windsor v. Bourcier*, 21 Wn.2d 313, 150 P.2d 717 (1944).

The record as a whole supports the conclusion that respondent is unable to conduct his law practice adequately because of his mental illness or incapacity. Roger C. Ryan is to remain on the inactive roll. He may petition for reinstatement to active status upon compliance with DRA 4.2.

The Disciplinary Board ordered that no costs be assessed against respondent so no costs are awarded.

ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.