[No. 200,104-1. En Banc.]
Argued November 9, 2004. Decided January 20, 2005.

*In the Matter of the Disability Proceeding Against* SUSAN
G. DIAMONDSTONE, *an Attorney at Law.*

432

J.M. Johnson, J., did not participate in the disposition of this case.

*Susan G. Diamondstone*, pro se.
*Patrick K. Fannin*, for petitioner.

*Joanne S. Abelson*, for the Bar Association.

¶1 BRIDGE, J. — Attorney Susan G. Diamondstone appeals the Washington State Bar Disciplinary Board's (Board) recommendation that she be transferred to disability inactive status. The hearing officer and a unanimous Board found that the Washington State Bar Association (Association) has shown beyond a simple preponderance of the evidence, in fact by a clear preponderance of the evidence, that Diamondstone lacks the capacity to practice law.

¶2 Diamondstone contends that there is not sufficient evidence in the record to support the conclusion that she is incapable of practicing law. In addition she argues that Rule for Enforcement of Lawyer Conduct (ELC) 8.7 violates due process because it requires that the Association prove her incapacity only by a simple preponderance of the evidence, rather than a clear preponderance. Finally, both through her attorney and pro se, Diamondstone argues that by placing her on disability inactive status the Association has discriminated against her, violating various constitutional and statutory provisions.

¶3 We find there is sufficient evidence in the record to support the conclusion of both the hearing officer and the unanimous Board that Diamondstone lacks the capacity to practice law. The Association proved her lack of capacity by at least a clear preponderance of the evidence. Therefore, there is no need to reach Diamondstone's argument that ELC 8.7's standard of proof is unconstitutional. Finally, we decline to reach arguments raised for the first time in this court and reject the discrimination claims set forth in Diamondstone's pro se brief. We adopt the recommendation of the hearing officer and Board and affirm the transfer of Susan Diamondstone to inactive status.

# I

## Statement of Facts[1]

¶4 Susan Diamondstone was admitted to the practice of law in California in 1984 and in Washington in 1986. Diamondstone began running a solo practice out of her home in Seattle in 1987. She focused primarily on family law and criminal defense for several years before adding employment law and discrimination cases to her practice.

¶5 In 2000, Diamondstone filed suit on her own behalf against several defendants in federal district court. In September 2001, after dismissing Diamondstone's claims, Federal District Court Judge Marsha J. Pechman filed a grievance with the Association, expressing concerns about Diamondstone's mental health. In June 2002, the Association filed a formal complaint against Diamondstone alleging that she suffered from mental health problems that impacted her ability to practice law. A hearing was held on September 23 and 24, 2003.

¶6 In his findings of fact and in more detail in his oral ruling, the hearing officer listed a number of instances in which Diamondstone engaged in odd, inappropriate behavior that sometimes impacted her clients. Diamondstone does not deny that any of these events occurred. Each of these instances supported the Association's assertion that Diamondstone suffers from a mental illness that impacts her capacity to practice law.

¶7 The hearing officer ordered Diamondstone to submit to an independent mental health evaluation by Dr. Brian Grant pursuant to ELC 8.2(c)(4). The hearing officer found that Dr. Grant has been a practicing psychiatrist since

---

[1] Prior to oral argument, Diamondstone requested that the entire case file be sealed. Mot. to Seal at 1. The Association did not object. We granted that request, subject to further review by the court. Article IV, section 2 of the Washington Constitution requires "[i]n the determination of causes all decisions of the [supreme] court shall be given in writing and the grounds of the decision shall be stated." In order to publish an opinion which states the grounds for our decision, we now find it necessary to refer to portions of the record. However, the record otherwise remains sealed.

1982, he is board certified in psychiatry and forensic psychiatry, he served as a board examiner, he is a fellow of the American Psychiatric Association, and he has conducted more than 1,000 forensic evaluations. Dr. Grant concluded with a reasonable degree of medical certainty that Diamondstone suffers from a psychiatric disorder. The hearing officer found: "Dr. Grant testified that as a result of Ms. Diamondstone's mental illness, her judgment, ability to process information, and ability to stay on task are all impaired, her thoughts and speech are derailed and tangential, she misperceives information, and [she] suffers from delusions and paranoia." Finding of Fact (FOF) 5. In Dr. Grant's opinion, Diamondstone lacks the mental capacity to practice law. While he concluded that Diamondstone does not exhibit symptoms of her illness at all times, Dr. Grant could not predict what types of situations would trigger impairments in Diamondstone's perceptions, judgment, and reasoning.

¶8 The hearing officer explained that Dr. Grant reached his conclusions after interviewing Diamondstone and after reviewing extensive written materials, including documents drafted by Diamondstone and reports written by others about their interactions with her. The hearing officer found Dr. Grant to be a reliable and credible witness whose report and testimony were persuasive, unrebutted, and essentially unchallenged.

¶9 The hearing officer considered Dr. Grant's conclusions in light of testimony from other witnesses, including Judge Pechman, attorneys who had served as opposing counsel against Diamondstone, former clients, and persons who had been sued by Diamondstone. They provided evidence that Diamondstone suffered from paranoid delusions, impaired reality testing, and an inability to accurately process information. The hearing officer found these witnesses to be credible. The hearing officer also referred to exhibits, including materials authored by Diamondstone herself. The hearing officer concluded that these materials "speak for themselves;" they clearly evidence symptoms of Diamondstone's mental illness. FOF 13.

¶10 The only witness to testify on Diamondstone's behalf was Diamondstone herself. She did not rebut much of the testimony and documentary evidence presented by the Association. To the extent that she did, the hearing officer did not find her testimony to be credible.[2] Ultimately, the hearing officer concluded that, though Diamondstone is a very bright, well-educated person, she suffers from a mental illness and as a result, she does not have the capacity to practice law.

¶11 The ELCs provide that the Association must prove an attorney's incapacity by a preponderance of the evidence. Diamondstone argued that this standard of proof is unconstitutional and that the Association should have to prove incapacity by a *clear* preponderance of the evidence. The hearing officer declined to conclude that the simple preponderance standard was unconstitutional; nonetheless, he found that the Association proved Diamondstone's incapacity "by a clear preponderance of the evidence—indeed, beyond a clear preponderance." Conclusion of Law (COL) 27; Transcript of Oral Decision (TR-D) at 27. He recommended that Diamondstone be transferred to disability inactive status.

¶12 On appeal, the Board unanimously adopted the hearing officer's findings of fact and conclusions of law. The Board specifically approved the hearing officer's finding that Diamondstone's incapacity was established by a clear preponderance of the evidence, and therefore the Board did not reach the question of whether a simple preponderance standard is unconstitutional. The Board unanimously recommended that Diamondstone be transferred to inactive status.

---

[2] While Diamondstone suggested that Dr. Grant was biased against her because she is Jewish, the hearing officer explained that this suggestion was based on a question that Dr. Grant asked during the interview about a religious observation for victims of the holocaust. The hearing officer noted that Dr. Grant is Jewish himself and he testified credibly that Diamondstone's religion was not a factor in his evaluation. The hearing officer rejected Diamondstone's contention that Dr. Grant's report was based on religious discrimination.

## II

## Analysis

¶13 This court must determine whether sufficient evidence supports the hearing officer's conclusion that Diamondstone lacks the capacity to practice law. We must also consider whether Diamondstone's challenge to the standard of proof in this case requires that we overturn the recommendation that she be transferred to inactive status. And we must evaluate the additional constitutional and statutory claims raised by counsel and by Diamondstone pro se.

¶14 Title 8 of the ELCs governs attorney disability proceedings. Disability proceedings are not disciplinary proceedings, but they are conducted under the same procedural rules unless otherwise noted in Title 8. ELC 8.2(b), (c)(1). Where, as here, the question of a lawyer's competence arises independently (not in the context of a disciplinary proceeding), ELC 8.2 applies. *Compare* ELC 8.2 *with* ELC 8.3. Under ELC 8.2, a review committee may require a hearing if there is reasonable cause to believe that the attorney lacks the mental or physical capacity to practice law. ELC 8.2(a). If the attorney does not obtain counsel, counsel must be appointed. ELC 8.2(c)(2). Once a hearing is ordered, the hearing officer may appoint an independent mental health professional to evaluate the attorney and submit a report. ELC 8.2(c)(4).

¶15 Rule 8.7 states that the party asserting incapacity must prove that the attorney lacks capacity to practice law by a preponderance of the evidence. ELC 8.7.[3] If the hearing officer finds that the attorney lacks capacity, then he or she must recommend that the attorney be transferred to inactive status. ELC 8.2(c)(5). The Board automatically reviews a hearing officer's finding of incapacity. ELC

---

[3] ELC 8.7 is a "new provision to clarify the burden and standard of proof in disability proceedings." 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE 598 (6th ed. 2002) (Drafters' Comment).

8.2(c)(6); ELC 11.2(b)(1). If the Board agrees, then the Board must immediately transfer the attorney to inactive status. ELC 8.2(c)(7). The attorney has a right to appeal the finding of incapacity to this court. ELC 8.4; ELC 12.3. If an attorney is transferred to disability inactive status, he or she may petition the Board for a return to active status once the attorney can show that the disability has been removed. ELC 8.8.

■ ¶16 Washington cases involving the transfer of an attorney to disability inactive status do not articulate a specific standard of review. *See In re Disciplinary Proceeding Against Meade*, 103 Wn.2d 374, 378, 693 P.2d 713 (1985); *In re Disciplinary Proceeding Against Ryan*, 97 Wn.2d 284, 286-87, 644 P.2d 675 (1982); *In re Matter of Campbell*, 74 Wn.2d 276, 278-79, 444 P.2d 784 (1968). However, the procedure for appealing an order of transfer to inactive status is the same as the procedure for appealing suspensions. *See* ELC 8.4. When reviewing decisions on disability, we will generally apply the same principles as we have adopted in attorney discipline cases.

■ ■ ¶17 *Sufficiency of the Evidence*: Diamondstone challenges the finding of both the hearing officer and the unanimous Board that the Association presented sufficient evidence to establish by a preponderance of the evidence, even by a clear preponderance of the evidence, that she lacks the capacity to practice law. To the extent that Diamondstone challenges the hearing officer's findings of fact, we review them as we would in a disciplinary proceeding. The mere presence of conflicting evidence in the record is not enough to overturn the hearing officer's findings of fact, and we do not ordinarily overturn unanimously approved findings of fact based on conflicting evidence. *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d 393, 405-06, 98 P.3d 477 (2004). We do not substitute our evaluation of a witness's credibility for that of the hearing officer. *Id.* Finally, we will uphold the hearing officer's conclusion of law regarding the ultimate finding of capacity if it is supported by the findings of fact. *In re Disciplinary*

*Proceeding Against Dynan*, 152 Wn.2d 601, 608, 98 P.3d 444 (2004).

¶18 Here, the hearing officer properly relied on Dr. Grant's uncontroverted testimony, which included his diagnosis. The hearing officer found Dr. Grant to be a reliable and credible witness whose report and testimony were persuasive, unrebutted, and essentially unchallenged. FOF 8, 9. Dr. Grant's qualifications, including board certifications in both psychiatry and forensic psychiatry, are well established, and Diamondstone did not object to his being treated as an expert witness. FOF 3; Transcript (TR-I) (Sept. 23, 2003) at 53. Dr. Grant's diagnosis was based on his one hour interview with Diamondstone,[4] the results of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) test, as well as an extensive review of documentary evidence provided by the Association, including documents and pleadings drafted by Diamondstone herself. FOF 10; TR-I at 74; TR-D at 21. While Dr. Grant reported that Diamondstone scored within normal limits in the MMPI-2 test, he also explained that the test involves self-reporting, and careful answers could have minimized Diamondstone's symptoms. TR-I at 75-77. While the MMPI-2 results indicate no mental illness, the other evidence in the record is overwhelming.

¶19 Diamondstone complains that Dr. Grant did not seek to determine whether the assertions set forth in her pleadings and letters were true. However, Dr. Grant reviewed documents that contradicted Diamondstone's claims in *Diamondstone v. Woods*, TR-I at 93-97, and he found Diamondstone's other statements to be incredible. TR-I at 73. The hearing officer was also able to evaluate Diamondstone's assertions in light of testimony from various witnesses denying that they acted as Diamondstone claimed. TR-D at 22; FOF 11.

---

[4] Diamondstone argues that the one hour interview was not sufficient for Grant to make a diagnosis, but a single interview appears to be standard practice in forensic psychiatry, TR-I at 57, and Dr. Grant also relied on voluminous documentary evidence. TR-I at 54-57.

¶20 Finally, Diamondstone argues that Dr. Grant was too vague in his discussion of his diagnosis under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV). However, Dr. Grant's testimony supports his diagnosis. TR-I at 71-74. He listed the DSM-IV criteria that Diamondstone met[5] and described Diamondstone's symptoms in detail. TR-I at 69-74.

¶21 Diamondstone contends that even if she has a mental illness, she does not necessarily lack the capacity to practice law. First, she argues that Dr. Grant does not possess the necessary expertise to determine her capacity to practice law. Even assuming for the sake of argument that this is true, the hearing officer, not Dr. Grant, made the ultimate determination that Diamondstone lacks capacity. COL 25, 26. "Dr. Grant testified that as a result of [her] mental illness, [Diamondstone's] judgment, ability to process information, and ability to stay on task are all impaired, her thoughts and speech are derailed and tangential, she misperceives information, and [she] suffers from delusions and paranoia." FOF 5. The hearing officer is a lawyer and is therefore able to use this information to form a conclusion as to Diamondstone's capacity to practice law. *See In re Disciplinary Proceeding Against Brown*, 94 Wn. App. 7, 13-14, 972 P.2d 101 (1998) (noting that members of the dental disciplinary board could use their experience and specialized knowledge to evaluate and draw inferences when evaluating unprofessional conduct).

¶22 Dr. Grant concluded that Diamondstone does not exhibit symptoms of her mental illness at all times. However, he could not predict what types of situations would trigger impairments in Diamondstone's perceptions, judgment, and reasoning. FOF 7. Diamondstone asserts that because she is not constantly impaired, with supervi-

---

[5] Diamondstone also questions the validity of the DSM-IV as a diagnostic tool. However, this court has relied on diagnoses based on this tool in the past. *See, e.g., Braam v. State*, 150 Wn.2d 689, 694 n.1, 81 P.3d 851 (2003); *In re Pet. of Campbell*, 143 Wn.2d 504, 506, 21 P.3d 1147 (2001).

sion she can continue to practice law in some circumstances.[6] However, this court has held that where it is impossible to predict when an attorney's judgment will be affected, a transfer to inactive status is appropriate. *Meade*, 103 Wn.2d at 378-79; *Ryan*, 97 Wn.2d at 287 (limited license would place too great a policing burden on the Association).

¶23 Finally, Diamondstone attempts to discredit the testimony of other witnesses including that of Judge Pechman, opposing counsel, and former clients. However, the hearing officer found the Association's witnesses to be generally credible, and his evaluation of witness credibility should not be disturbed by this court. *See Egger*, 152 Wn.2d at 405-06. The hearing officer considered the cumulative weight of this testimony, along with the report and testimony of Dr. Grant and the extensive documentary evidence in this case. He justifiably concluded that the Association proved Diamondstone lacks the capacity to practice law by a clear preponderance of the evidence.

■ ¶24 *The Preponderance of the Evidence Standard*: As stated above, we agree with the ultimate conclusion of both the hearing officer and the Board; the Association has shown Diamondstone lacks the capacity to practice law by a clear preponderance of the evidence. Therefore, there is no need to reach the question of whether the simple preponderance of the evidence standard set forth in ELC 8.7 is unconstitutional. *See, e.g., Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002) (noting that where a case can be resolved on other grounds, this court should decline to reach a constitutional question).

¶25 *Americans with Disabilities Act (ADA) and Equal Protection Claims*: ELC 12.1 incorporates the Rules of Appellate Procedure (RAP) as guidance for review of cases under the ELCs. RAP 2.5(a) states that this court "may refuse to review any claim of error which was not raised [at

---

[6] We note that no such proposal was presented to the Association at or before Diamondstone's hearing.

the trial level];" however, a party may raise "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a). This court has applied RAP 2.5(a) in attorney discipline cases. *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 764, 801 P.2d 962 (1990).

¶26 ADA Claim:[7] Title II of the ADA protects against disability discrimination by public entities. 42 U.S.C. § 12132. Specifically, a public entity may not administer a licensing or certification program in a manner that discriminates against qualified individuals with disabilities. 28 C.F.R. § 35.130(b)(6). A public entity must make reasonable modifications when necessary to avoid discrimination on the basis of disability unless such modifications would fundamentally alter the nature of the government activity. 28 C.F.R. § 35.130(b)(7).

¶27 Diamondstone contends, for the first time in this court, that her disability proceedings under the ELCs violated the ADA because the Association did not accommodate her perceived mental disability. Diamondstone argues that the Association should have allowed her to continue a limited practice under the supervision of another attorney.

¶28 Because this claim was not presented to the hearing officer, we decline to reach it; the Association did not have an opportunity to develop facts at the hearing necessary to address Diamondstone's ADA claim.[8] Specifically, the Association did not have the opportunity to show that placing Diamondstone on supervised probation, as she now suggests, would require a substantial modification of its licensing standards. Moreover, the record does not support a finding that Diamondstone is a qualified indi-

---

[7] Diamondstone also mentions the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, but does not offer a separate analysis based on state law. Br. of Appellant at 5 n.1. Therefore, we decline to address any WLAD claim that Diamondstone may have asserted.

[8] Diamondstone claims that she did raise the ADA issue in her pro se materials at the hearing level. However, at the hearing level Diamondstone claimed instead that the Association discriminated against her based on her allergies and asthma. Clerk's Papers at 11-12. Because the ADA analysis is very specific to the disability at issue, this is not enough to encompass the current claim that the Association discriminated against her based upon her perceived mental illness.

vidual who can meet the Association's licensing requirements, even with her suggested accommodation.

¶29 Equal Protection Claim: Diamondstone also contends that her transfer to inactive status violates the equal protection clause of the United States Constitution.[9] Specifically she notes, for the first time on appeal, that she will be excluded entirely from the practice of law and may not return to active status until she can show that her disability has been removed. ELC 8.8(a). She argues that this treatment differs from the way that the bar handles both disciplined attorneys and initial bar applicants in that disciplined attorneys are sometimes allowed to continue to practice under supervised probation and initial bar applicants are not required to prove their capacity in order to obtain an initial license to practice law.

¶30 Under RAP 2.5(a), we decline to address new constitutional issues raised for the first time on appeal unless the claim reflects a manifest error affecting a constitutional right. RAP 2.5(a) "was not designed to allow parties 'a means for obtaining new trials whenever they can "identify a constitutional issue not litigated below." ' " *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999) (quoting *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (quoting *State v. Valladares*, 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983))). If the record is insufficient to evaluate the merits of the constitutional claim, then we must deny review. *Id.* In addition, the party making the new argument must show a concrete detriment to the claimant's constitutional rights such that actual prejudice has resulted. *Id.* at 602-03.

¶31 Diamondstone has not established a concrete detriment to her constitutional rights or actual prejudice because she has not shown that her equal protection claim

---

[9] Without discussion, Diamondstone also argues, for the first time on appeal, that her rights under the privileges and immunities clause of the Washington Constitution were violated. Br. of Appellant at 49. However, she offers no substantive analysis. Therefore, we also decline to address this claim.

could have succeeded below. To survive an equal protection challenge, the ELC provisions at issue here must only be rationally related to a legitimate state objective. *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996); *Merseal v. Dep't of Licensing*, 99 Wn. App. 414, 420-21, 994 P.2d 262 (2000).[10] The different treatment of disabled attorneys from disciplined attorneys and bar applicants seems rationally related to the legitimate state interest in protecting the public and maintaining the integrity of the legal profession. While disciplined attorneys have some-times been placed on supervised probation, *see In re Disciplinary Proceeding Against Burtch*, 112 Wn.2d 19, 29, 770 P.2d 174 (1989), the Association could reasonably predict that, with supervision, those attorneys could practice within the bounds of the Rules for Professional Conduct. The same cannot be said for Diamondstone. In addition, while bar applicants generally need not prove their mental capacity in order to be admitted to the bar, *see* Admission to Practice Rule 3, those applicants have no prior finding of incapacity to overcome. Therefore, the Association's prac-tice of treating disciplined attorneys and bar applicants differently than it treats incapacitated attorneys would be rationally related to the legitimate state interest in protect-ing the public and maintaining the integrity of the profes-sion. Diamondstone has not established actual prejudice because she has not shown that her equal protection claim would have succeeded below; she has not shown a manifest error affecting a constitutional right, and therefore we decline to review her equal protection claim in more detail.

¶32 *Issues Raised Pro Se*: Diamondstone raises various

---

[10] The classification of disabled attorneys does not involve a suspect class and it does not threaten a fundamental right, so strict scrutiny is not applicable here. *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993); *see also Manussier*, 129 Wn.2d at 672. Intermediate or heightened scrutiny has been applied "in limited circumstances where strict scrutiny is not mandated, but where important rights or semi-suspect classifications are affected." *Shawn P.*, 122 Wn.2d at 560. Yet Diamondstone has not shown that disabled persons are a semisuspect class or that an important right has been affected for the purposes of equal protection analysis. *See Merseal*, 99 Wn. App. at 421 (noting that existence of an important interest for purposes of due process analysis does not necessarily mean an important interest exists for the purposes of equal protection).

additional issues pro se. Most of the pro se claims are based upon Diamondstone's belief that Dr. Grant's diagnosis is somehow based on the fact that she is Jewish. This belief seems to arise from Dr. Grant's interview, in which he asked about her support of the establishment of a religious holiday to remember the victims of the holocaust. TR-I at 85. In his testimony, Dr. Grant explained that he was simply curious about the holiday. TR-I at 84-85; Transcript (Sept. 24, 2003) at 417. The hearing officer concluded that Dr. Grant testified credibly that Diamondstone's religion was not a factor in his evaluation. The hearing officer did not accept Diamondstone's contention that Dr. Grant's report was based on any sort of religious discrimination. TR-D at 25; FOF 24.

¶33 We conclude that there is no evidence in the record to support a claim of religious discrimination. Dr. Grant is Jewish himself; in fact it appears that Diamondstone requested that her evaluation be performed by a Jewish psychiatrist. Clerk's Papers (CP) at 15. We see no reason to overturn the hearing officer's evaluation of Dr. Grant's credibility. *Egger*, 152 Wn.2d at 405-06. Therefore, we affirm the hearing officer's conclusion that Dr. Grant did not in any way rely on Diamondstone's religious beliefs to support his diagnosis.

¶34 Diamondstone also claims that her rights to due process were violated when she was prohibited from representing herself in the disability hearing. This court has held that "[i]f an attorney does not have the requisite mental competency . . . to adequately represent himself or herself, the attorney's due process right to a fair hearing is violated if the attorney is allowed to appear pro se." *Meade*, 103 Wn.2d at 381. Therefore, due process in fact required the Association to appoint counsel to represent Diamondstone in these proceedings.

¶35 Diamondstone also complains that appointed counsel failed to conduct discovery to investigate whether Dr. Grant relied on medical records that were not, in fact, Diamondstone's. However, nothing in Dr. Grant's testi-

mony, his written evaluation, or in the hearing officer's findings indicates that Dr. Grant or the hearing officer relied on medical records other than Diamondstone's. *See* TR-I at 110; CP at 19-27.

¶36 Diamondstone also asserts that the Association did not give her proper notice of the charges because it dismissed disciplinary grievances filed against her but then began disability proceedings based on the same conduct. The Association did dismiss disciplinary proceedings against Diamondstone but noted in the dismissal letters that it would be conducting disability proceedings based on some of the concerns raised in the grievances. *See* Ex. 3o; Ex. 3y. The Association's decision to dismiss disciplinary proceedings against Diamondstone, therefore, did not eliminate notice that disability proceedings would be pursued.

¶37 Finally, Diamondstone claims that the Association discriminated against her because she has an allergy to strawberries. There is no evidence in the record to support this claim. The Association referred to Diamondstone's allergies only in the context of describing claims that she brought in federal court. Therefore, there is not sufficient evidence in the record to support a claim that the Association discriminated against Diamondstone based on her allergies. In sum, none of Diamondstone's pro se arguments are convincing in light of the record in this case.[11]

III

Conclusion

¶38 We adopt the recommendation of the hearing officer, affirmed by a unanimous vote of the Board, to transfer Diamondstone to inactive status. The hearing officer's find-

---

[11] We recognize that Diamondstone both through her counsel and pro se has raised multiple arguments in support of her position. While this court has considered all of the issues raised by Diamondstone, in the interests of economy, we have included only the discussion we found necessary to explain the resolution of this case.

ings of fact and conclusions of law are supported by sufficient evidence in the record, and the Association has shown by a clear preponderance of the evidence that Diamondstone lacks the capacity to practice law. We need not address the constitutionality of the standard of proof set forth in ELC 8.7. We decline to review the ADA and equal protection claims raised for the first time on appeal. Finally, we reject Diamondstone's pro se arguments. We affirm Diamondstone's transfer to inactive status.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, and FAIRHURST, JJ.; and IRELAND, J. Pro Tem., concur.