154 P.3d 213 (2007)
In the Matter of the Disability Proceeding Against John M. KEEFE, Attorney at Law.
No. 200,388-5.
Supreme Court of Washington, En Banc.
March 22, 2007.
*214 Kurt M. Bulmer, Attorney at Law, Seattle, WA, for Petitioner.
Marsha Ann Matsumoto, Washington State Bar Association, Seattle, WA, for Respondent.
OWENS, J.
¶ 1 Attorney John M. Keefe appeals the Washington State Bar Association Disciplinary Board's (Board) recommendation to transfer Keefe to disability inactive status. The hearing officer and a majority of the Board found that the Washington State Bar Association (Association) proved by a clear preponderance of the evidence that Keefe lacks the mental capacity to practice law and to assist counsel in defending against his disciplinary proceeding. See Rules for Enforcement of Lawyer Conduct (ELC) 8.3(d)(7). Keefe challenges the sufficiency of the evidence and argues there is no nexus between the delusional statements he made in the context of his disciplinary proceeding and his ability to practice law. We affirm the Board's transfer of Keefe to disability inactive status because substantial evidence supports the decision.

FACTS
¶ 2 Keefe is an attorney admitted to the practice of law in Washington State. Clerk's Papers (CP) at 50. In April 2002, the Association filed a formal disciplinary complaint against Keefe alleging that he failed to comply with court rules and failed to avoid a conflict of interest in a commercial litigation lawsuit. In the context of this disciplinary *215 hearing and his subsequent appeal, Keefe represented himself and conducted his defense in a manner that suggested his perception and reasoning were distorted. Keefe made unusual allegations about events he perceived to have occurred at the hearing. Because of the delusional nature of Keefe's statements, the Association filed a motion for supplemental disability proceeding and suspended the disciplinary case pending the disability proceeding. Keefe did not comply with the hearing officer's order to have an independent mental examination. Keefe also did not attend the disability hearing. Although his appointed attorney attended the hearing, he did not participate per Keefe's instruction. The Association presented lay and expert testimony to establish Keefe's disability.
A. Lay witness testimony at disability hearing
¶ 3 The lay witnesses testified that Keefe's allegations about the disciplinary proceeding were not true. Keefe alleged that the Christian Right Mafia, a Seattle law firm, and his former law professors had fixed the disciplinary hearing and that a Seattle attorney interrupted his phone calls and made statements during the hearing. Ex. 15. He further alleged that an imposter repeatedly posed as the Association's disciplinary counsel. See id. at 27-28. At the disability hearing, the Association's disciplinary counsel testified that the proceeding was not fixed and that he, not an imposter, participated in the disciplinary hearing. 1 Tr. of Disability Hr'g (TR) at 59-73. He also testified that several issues Keefe raised were not part of the reported proceedings, including those related to the "Christian Right controlled Bar Association," "transferring the proceeding to the [American Bar Association]," "submitted lawyers," and "Christian Right[ ] hit squads." Id. at 55-56; Ex. 14, at 9. The Seattle attorney identified by Keefe testified that he had no involvement in the disciplinary proceedings, was not present at the hearing, and did not interrupt Keefe's conversations. 1 TR at 83-86. The disciplinary hearing officer testified that he had not made the statements that Keefe attributed to him, that he had never heard of the term "submitted lawyer," and that he had no prior contact with Keefe or bias against him. 2 TR at 134-53. The court reporter certified that contrary to Keefe's allegations, the disciplinary hearing transcript was complete and accurate. 1 TR at 77-78. The disability hearing officer found these witnesses credible. CP at 56-57.
B. Expert testimony at disability hearing
¶ 4 The disability hearing officer qualified Dr. Brian Grant as an expert after Dr. Grant testified that he began practicing medicine in 1979, is a distinguished fellow of the American Psychiatric Association and board certified in general psychiatry and forensic psychiatry, and has performed "[w]ell over a thousand" forensic evaluations. 1 TR at 91-95, 97. Dr. Grant testified that Keefe's abilities to receive and process information, reason, and distinguish fantasy from reality were impaired. Id. at 122-23. Because Keefe did not submit to an examination, Dr. Grant formed his opinion by evaluating 25 exhibits, including Keefe's written documents and transcripts from the disciplinary hearing and depositions Keefe conducted before the hearing.
¶ 5 Dr. Grant reviewed the statements Keefe had made in discovery requests before the disciplinary hearing. Dr. Grant testified that these statements "reflected . . . some delusional and/or paranoid thinking," "seemed to have no bearing upon the case at hand," "showed a lack of grasp of reality," and had an "overall flavor . . . of paranoia" because of his "belief that a number of forces [were] at work against him in some conspiratorial fashion that [was] not in any way supported by credible data." Id. at 104-07.
¶ 6 Dr. Grant also reviewed the statements Keefe made in pleadings, declarations, and motions. During the disciplinary proceeding, Keefe filed a motion alleging that the Christian Right Mafia controls the members of the Association and requested transfer of his disciplinary hearing to the bar associations of New York or the District of Columbia. Exs. 1, 2. Keefe alleged in this motion that the Christian Right and its mafia have the "sole function in life [of] stop[ping] meritorious *216 cases and lawyers like myself" and operate "through the ear device and a well-organized system of extortion, bribery and corruption." Ex. 1, at 7. Also during the disciplinary hearing, Keefe filed a petition for review with this court, stating that the consequence for his failure to become a "submitted lawyer" is "[s]low death by Christian Right hit squads, suspension and eventual disbarment." Ex. 14, at 9. Keefe filed pleadings in the United States District Court for the Central District of California and for the Western District of Washington, which repeated his allegations about the "fixed" disciplinary hearing and the technology the Christian Right uses to control members of the Association. Exs. 19, 30. In addition to these documents, Dr. Grant examined Keefe's written statements relating to his disciplinary appeal, which explained the events that Keefe perceived during the disciplinary hearing. Ex. 15.
¶ 7 With respect to these written documents, Dr. Grant testified that they "were a continuation of a prior theme of a series of delusions, impaired reality testing, a lot of paranoia, [and] derailed thinking, issues that have nothing to do with the case at hand." 1 TR at 112-13. Dr. Grant noted that Keefe "made regular reference to individuals having interest in this case, despite a lack of any such evidence, alleged comments being made in [the] proceedings that [were] unsubstantiated, and [had] an apparently fixed, delusional system referencing a right-wing Christian conspiracy, and listening devices." Id. at 119. He explained that Keefe's statements were "[t]he sort of content and pattern that [are] consistent with an underlying thought disorder or similar psychological impairment." Id. Dr. Grant listed several potential diagnoses, including paranoid schizophrenia, but explained that he does not "make a competency determination or opine on a person's ability to practice law based upon the presence or absence of a particular diagnoses [sic]"; rather, "[i]t is how he is functioning that is most important." Id. at 122. Dr. Grant concluded to a reasonable degree of medical certainty that Keefe's abilities to receive and process information, reason, and distinguish fantasy from reality were impaired. Id. at 122-23.
C. Decisions of hearing officer and Board
¶ 8 The hearing officer found by a clear preponderance of the evidence that Keefe's delusional statements, paranoid thinking, and impaired ability to reason rendered him incapable of practicing law. He also found that Keefe was incapable of defending himself and assisting counsel in the defense of his disciplinary proceeding. The hearing officer thus recommended suspending Keefe and transferring him to disability inactive status. CP at 58.
¶ 9 The Board affirmed the hearing officer's recommendation in a nine-three decision. The majority found the record supported the hearing officer's conclusion that Keefe's mental status prevented him from offering the level of competence and skill required of a practicing attorney. Decision Papers at 31-35. The dissent argued the Board should have remanded for new proceedings because the procedural defects resulted in a nonadversarial proceeding. Id. at 37. Although the majority acknowledged the dissent's concerns about due process and the adequacy of Keefe's appointed counsel, it dismissed these issues because they resulted from Keefe's refusal to cooperate with counsel and failure to present a credible defense through examination by an independent mental health professional. A concurring opinion emphasized that Keefe may clarify his mental capacity by submitting to an independent mental examination. Id. at 36; see ELC 8.8 (explaining procedure for reinstatement to active status). Keefe appeals the Board's order.

ISSUE
¶ 10 Does sufficient evidence support the hearing officer's findings that Keefe lacks the capacity to practice law and to defend himself against his disciplinary action, with or without counsel?

ANALYSIS
¶ 11 Keefe contends that the hearing officer lacked sufficient evidence to recommend Keefe's transfer to disability inactive status. *217 The hearing officer must recommend the attorney's transfer to disability inactive status upon finding that the attorney's mental or physical disability prevents him or her from competently practicing law or assisting counsel in properly defending the disciplinary proceeding. ELC 8.3(d)(7)(C). If the Board agrees with the hearing officer's recommendation, the Board must immediately transfer the attorney to disability inactive status. ELC 8.3(d)(8)(A). The attorney may appeal an order of transfer to disability inactive status to the Supreme Court under ELC 8.4.
¶ 12 When an attorney challenges the hearing officer's findings of fact, we review them as we would in a disciplinary proceeding. In re Disability Proceeding Against Diamondstone, 153 Wash.2d 430, 438, 105 P.3d 1, cert. denied, ___ U.S. ___, 126 S.Ct. 93, 163 L.Ed.2d 110 (2005). "We give considerable weight to the hearing officer's findings of fact, especially with regard to the credibility of witnesses, and we will uphold those findings so long as they are supported by `substantial evidence.'" In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 208-09, 125 P.3d 954 (2006). "`Substantial evidence exists if the record contains "evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." ' " Id. at 209 n. 2, 125 P.3d 954 (internal quotation marks omitted) (quoting In re Disciplinary Proceeding Against Bonet, 144 Wash.2d 502, 511, 29 P.3d 1242 (2001)). "The mere presence of conflicting evidence in the record is not enough to overturn the hearing officer's findings of fact." Diamondstone, 153 Wash.2d at 438, 105 P.3d 1. We uphold conclusions of law regarding the ultimate finding of incapacity if the findings of fact support them. Id.
A. Challenge to Dr. Grant's testimony
¶ 13 Keefe challenges the sufficiency of the evidence with respect to Dr. Grant's testimony because Dr. Grant did not perform an in-person evaluation of Keefe. Although the hearing officer ordered Keefe to submit to an independent mental evaluation pursuant to ELC 8.3(d)(5), Keefe refused. Under ELC 8.3(d)(6), the hearing officer must conduct the hearing even if the respondent attorney "fails to appear for an independent examination, fails to waive health care provider-patient privilege . . ., or fails to appear at the hearing." If the hearing officer is "presented with sufficient evidence to determine incapacity, [he or she must] order the respondent transferred to disability inactive status." ELC 8.3(d)(6)(A).
¶ 14 Keefe nonetheless challenges Dr. Grant's testimony on the grounds that Dr. Grant's failure to perform an in-person examination of Keefe undermined his expert opinion. He relies on Dr. Grant's statement that members of his profession usually evaluate individuals in person before forming expert opinions. Under the Rules of Evidence (ER), which serve as guidelines in disability hearings, an expert witness must have a reasonable basis of information about the subject before offering his or her expert opinion. See ER 702, 703. ER 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Though the expert need not have personal, firsthand knowledge of the evidence upon which he or she relies, the evidence must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Id. Under this rule, we have affirmed the admission of expert testimony from a blood splatter expert who reviewed only documentary evidence of photographs and videotape and examined the victim's clothing and chair. State v. Roberts, 142 Wash.2d 471, 522, 14 P.3d 713 (2000); see also Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wash.App. 368, 374, 901 P.2d 1079 (1995) (allowing testimony about likely windstorm damage where expert did not personally experience the windstorm).
¶ 15 Although an in-person evaluation of Keefe's mental capacity may have strengthened Dr. Grant's testimony, neither the disability hearing rules nor the ERs require such firsthand knowledge. Dr. Grant based his expert opinion on Keefe's written statements because Keefe did not authorize the release of his medical records and did not *218 comply with the hearing officer's order to have an independent mental examination. Dr. Grant indicated that "reviewing the statements or writings of a subject [is] one of the standard procedures . . . used in psychiatric evaluations."[1] 1 TR at 99. Through his review of more than 25 exhibits covering three years of documents and transcribed proceedings, Dr. Grant observed statements that reflected Keefe's perception of reality, state of mind, and delusional thinking. Dr. Grant relied on this information to formulate his expert opinion that "he probably has paranoid schizophrenia" and his delusional thinking impairs his "ability to receive or process information," his "ability to reason," and his "ability to distinguish fantasy from reality." Id. at 120, 122. Dr. Grant's review of the voluminous written documents constitutes a reasonable basis of information upon which he permissibly based his expert opinion.
¶ 16 Keefe also argues that Dr. Grant "was not a detached expert rendering an opinion but rather considered the [Association] to be his client so in order to accommodate them he came up with an assessment." Opening Br. of Resp't at 16. Keefe provides no authority, however, for the proposition that an expert must be a detached witness. Moreover, nothing in the record supports Keefe's contention that Dr. Grant was biased. Keefe's attorney, apparently following Keefe's instruction to not participate in the hearing, did not object to Dr. Grant's testimony and did not cross-examine him about any potential biases. We rely on the hearing officer's witness credibility determinations and therefore accept his finding that Dr. Grant's testimony was credible and persuasive.
B. Determination that Keefe lacks the capacity to practice law
¶ 17 Keefe also challenges the hearing officer's determination that Keefe lacks the capacity to practice law. He admits the Association may have demonstrated that he heard voices and had delusional beliefs, but argues that substantial evidence does not establish a nexus between these matters and his ability to represent others.[2]
¶ 18 In cases involving an attorney's mental capacity to practice law, we have upheld the hearing officer's finding of incapacity where the attorney's condition only affected his or her judgment in certain circumstances. See, e.g., In re Disciplinary Proceeding Against Meade, 103 Wash.2d 374, 379-80, 693 P.2d 713 (1985); In re Disciplinary Proceeding Against Ryan, 97 Wash.2d 284, 287, 644 P.2d 675 (1982); In re Campbell, 74 Wash.2d 276, 280-81, 444 P.2d 784 (1968). In Meade, the psychiatrist testified that Meade "was competent to handle most legal matters" and "may have appeared competent at the earlier proceedings because his appearance and verbal abilities were unaffected." 103 Wash.2d at 378-79, 693 P.2d 713. Nonetheless, we affirmed Meade's transfer to disability inactive status because his paranoid state would affect his perceptions and judgment in particular cases related to his delusional system. Id. at 379, 693 P.2d 713. In Ryan, we found a sufficient nexus between the attorney's mental condition and his competency to practice law because his delusions were intimately connected with his practice *219 of law. 97 Wash.2d at 287, 644 P.2d 675. We also affirmed Ryan's transfer to disability inactive status because the evidence indicated that "Ryan, if restored to active status, might make irrational judgments concerning the merits of cases brought before him and might continue to subject clients to litigation based on allegations of conspiracy and fabrication." Id. In Campbell, we affirmed the board's recommendation that Campbell be transferred to inactive status "on the basis that a lawyer who believes that he has a constitutional right to use our courts to compel someone who doesn't want to employ him to nevertheless pay him $300 a month for an indeterminate future period is mentally incapable of adequately and competently representing clients in legal matters." 74 Wash.2d at 279, 444 P.2d 784.
¶ 19 The hearing officer found that Keefe's mental disability rendered him incapable of practicing law. The hearing officer relied on Keefe's statements and delusions in the context of his own representation to assess his ability to practice law and represent others. By conducting discovery and filing motions and pleadings in several courts during his disciplinary hearing, Keefe engaged in the practice of law. Though he represented himself, his actions impacted the legal system through his contacts with opposing counsel and third parties. As we emphasized in Meade, Ryan, and Campbell, the hearing officer may consider the attorney's likely impact on the legal system. Lay witnesses testified that Keefe filed inappropriate motions, conducted discovery into irrelevant matters, engaged in "over the top" litigation, and made bizarre assertions in legal proceedings. Answering Br. of Ass'n at 24; 2 TR at 137; 1 TR at 29-48, 56-57, 73. Dr. Grant's expert testimony established that Keefe's delusional system may affect his judgment and perception in particular cases and that his mental condition impaired his abilities to reason, establish facts, and distinguish fantasy from reality. 1 TR at 122-23. An attorney must have these abilities to provide competent representation in the practice of law. Because the evidence supports the hearing officer's findings regarding Keefe's mental condition and its impact on the legal system, we affirm the hearing officer's determination that Keefe lacks the capacity to practice law.
C. Determination that Keefe lacks the capacity to defend his disciplinary action, with or without the assistance of counsel
¶ 20 Keefe also challenges the hearing officer's finding that he is incapable of defending himself with or without counsel against the disciplinary proceedings. An attorney is competent to appear in bar disciplinary proceedings when he is "`capable of properly understanding the nature of the proceedings against him'" and "`capable of rationally assisting his legal counsel in the defense of his cause.'" Meade, 103 Wash.2d at 380, 693 P.2d 713 (quoting State v. Gwaltney, 77 Wash.2d 906, 907, 468 P.2d 433 (1970)). But a finding that the attorney is competent to appear is not equivalent to a finding that the attorney is competent to appear pro se. Id. at 381, 693 P.2d 713. Attorneys appearing pro se must have the capacity to intelligently waive the services of counsel and adequately represent themselves by "respond[ing] appropriately [and] rais[ing] legitimate defenses." Id. at 380-81, 693 P.2d 713. Under this standard, we have held that attorneys are not competent to defend their disciplinary actions where their mental condition interferes with their understanding of the underlying situation and prevents them from responding appropriately and raising legitimate defenses. See id.
¶ 21 Keefe argues that the hearing officer erroneously found him incompetent to appear, with or without counsel, because he understood the nature of his disciplinary proceedings. Keefe also contends that under Meade, an attorney is incompetent to appear pro se only where he is not capable of raising legitimate defenses. Opening Br. of Resp't at 21. Because he raised other arguments and defenses in his briefs and "only asserts the alleged delusional facts in support of a much broader argument that the hearing officer and the system denied him due process because of bias," Keefe contends that the hearing officer erroneously found him incompetent to defend himself. Id.
*220 ¶ 22 The hearing officer reasoned that Keefe's delusional perceptions of the Association prevented him from rationally assisting counsel in his defense. As the Association points out, "[l]ike the lawyer in Meade, Keefe may intellectually understand the nature of the disciplinary proceeding and may even be competent to handle `most legal matters,'" but may nevertheless be unable to assist with or defend against his disciplinary proceeding. Answering Br. of Ass'n at 27. The documents supporting the hearing officer's finding of Keefe's incapacity to defend demonstrate that "Keefe's mental impairment is affecting his `judgment on particular cases related to his delusional system.'" Id. Dr. Grant's testimony indicated that although Keefe "is not so disorganized that he is not able to make filings," "[t]here is a bit of disconnect there." 1 TR at 116. He explained that the form of Keefe's pleadings "seems to be well done," but "the substance makes no sense." Id. The fact that Keefe may have raised some legitimate arguments and defenses does not necessarily render him capable of defending himself. Substantial evidence in the form of Keefe's written documents and lay and expert testimony about Keefe's defense in the disciplinary proceeding supports the hearing officer's finding that Keefe lacks the capacity to defend himself, with or without counsel.

CONCLUSION
¶ 23 The hearing officer found by a clear preponderance of the evidence that Keefe's mental condition and delusional beliefs prevent him from competently practicing law and defending against the disciplinary proceeding. Substantial evidence supports the hearing officer's findings of fact and conclusions of law. Accordingly, we affirm the Board's decision to adopt the hearing officer's recommendation and transfer Keefe to disability inactive status.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justices TOM CHAMBERS, CHARLES W. JOHNSON, BARBARA A. MADSEN, MARY E. FAIRHURST, JAMES M. JOHNSON, BOBBE J. BRIDGE, and MARLIN J. APPELWICK, Justice Pro Tem.
NOTES
[1] Before offering his preliminary conclusions, Dr. Grant explained, "[T]here is an unusual factor that we need to acknowledge and discuss about this case, which is, I did not evaluate Mr. Keefe. Not for lack of willingness or availability. And it is customary in rendering a psychiatric opinion to do an actual mental status examination, and interview a claimant or patient or defendant, which wasn't possible, to date, in this case, due to Mr. Keefe's refusal to make himself available. Therefore, I'm hedging my assessment with a willingness always to enhance, revise, or even change it based upon an interview with [Keefe]." 1 TR at 117-18.
[2] Keefe also challenges the foundation for Dr. Grant's opinion regarding his ability to practice law. But we have recognized that the hearing officer, not the expert witness, makes the ultimate determination about an attorney's capacity. Diamondstone, 153 Wash.2d at 440, 105 P.3d 1 (explaining that "[t]he hearing officer is a lawyer and is therefore able to use this information to form a conclusion as to [an attorney's] capacity to practice law") (citing In re Disciplinary Proceeding Against Brown, 94 Wash.App. 7, 13-14, 972 P.2d 101 (1998) (recognizing that members of the dental disciplinary board could use their "experience and specialized knowledge to evaluate and draw inferences from the evidence when finding unprofessional conduct")).